OLIVER R. MATTESON *et al. vs.* THOMAS G. WHALEY *et al.*

PROVIDENCE—MARCH 9, 1898.

PRESENT : Stiness, Tillinghast and Rogers, JJ.

A highway was authorized by the General Assembly in 1813 and a plat thereof filed ; the line was changed by the Assembly in 1815 to conform to the terms of a deed that was subsequently lost :—

*Held,* that the lines on the plat were an uncertain guide, and the only evidence to be relied on was that which showed where the way was built.

A town council, having appointed a committee to ascertain the lines of an existing way and make a plat thereof, received the committee's report and plat with a declaration that the way was as shown on the plat :—

*Held* that this action was an *ex parte* proceeding from which no appeal was provided by statute, and failure to prosecute an appeal taken in such case did not affect the appellant's rights.

One cannot neglect or abandon a statutory remedy for a statutory liability and then set up the same right in another way.

A bill in equity may be maintained to prevent continuing trespasses.

BILL IN EQUITY for an injunction to restrain continuing trespasses.   Heard on pleadings and proofs.

STINESS, J.   The question in this case is whether a triangular strip at the eastern corner of the Phenix and Quidnick roads, in the village of Anthony, belongs to the complainant or is a part of the highway.

The highway in question was formerly the Coventry and Cranston Turnpike, authorized to be built by the General Assembly in 1813, a plat of which was filed in the clerk's office of the Court of Common Pleas.   The town of Coventry, represented by the respondents, claims the strip under this plat, which shows a straight line at the place in dispute.   In 1815 the General Assembly amended the charter, altering the line through the farm of Theodore Foster according to the terms of a deed which cannot now be found.   How much change was made in the lines at this time it is impossible to say, but, in view of the change, the lines of the plat are an uncertain guide.   The only evidence of the line of the road which can now be relied on is that which shows where it was built.   The strong point for the town is the fact that the

plat lines are straight, while the line which the complainants claim bends at the apex of the triangle. We often find, however, that old roads were not built according to their platted lines and that it would result in great damage to private rights to hold strictly to a plat. Hence in *Almy* v. *Church*, 18 R. I. 182, it was held that while the public cannot be ousted of its right in a highway by adverse possession, yet another way equally convenient may be substituted, by general and long continued acquiescence, for the original way. The plat of 1813 cannot be relied on, because of the change in the road, and no other official plat appears. A private plat, in 1822, shows a straight line on one side and a bend on the other side. We are of the opinion that the road was built with a bend at the place in question. Not only does the testimony show this, but there are several reasons why it should be so. The land at this corner was wet, and it would be quite natural to avoid it. The straight line left a triangular piece on the opposite side, and the plat of 1822 indicates that it was taken into the road. It is hardly probable that the elm tree would have been left nearly in the middle of the road, as it would have been without the bend. The land was used as private property long ago, being bricked over as a space in front of the tavern door. A gutter was laid in it by the town, which took the water from the road ; but this fact is hardly significant in favor of the town, because the place was wet and the gutter kept the water from washing across the owner's yard, to which he would not be likely to object. Except the making of the gutter, the surveyor of highways did no work upon it as a road. People drove across it to some extent, before it was fenced, but the traveled way was west of the tree, and the use of this piece was not enough to show that it was a part of the road or that it was dedicated as such.

Our conclusion is that the road was built substantially as claimed by the complainants and that there is no conclusive testimony to show that it was otherwise located.

The defendants urge that the complainants have no remedy in equity, because they took an appeal from a vote of the

town council passed March 3, 1890, receiving the plat of a committee appointed to lay out and plat that portion of the highway at this corner and establishing the road as shown thereon, and that, as they did not prosecute their appeal, they have lost their remedy. This would undoubtedly be so if the complainants had taken an appeal from any action of the town council for which an appeal was provided. One cannot neglect or abandon a statutory remedy for a statutory liability and then set up the same right in another way. *Inman* v. *Tripp*, 11 R. I. 520 ; *Smith* v. *Tripp*, 14 R. I. 112. The town council in this case did not lay out or declare a highway as provided by statute, for which an appeal would lie, but it appointed a committee to ascertain the line of an existing way and to make a plat of it, which was received with a declaration that the way was as shown thereon. This was simply an *ex parte* proceeding. Such an appeal, if prosecuted, would have been dismissed for want of jurisdiction, because it was not an appeal provided for by statute. *Whittier* v. *Town Council*, 10 R. I. 266. No new road was laid out. Hence if the fence ordered to be removed was in the highway, that fact would justify the town officers in carrying out the order of the council ; if it was not in the highway the removal would be a trespass, for which an action would lie. As the court is of opinion that the fence was not in the highway and has held on demurrer, 19 R. I. 648, that the bill is maintainable upon the ground of preventing continuing trespasses, it follows that the complainants are entitled to the relief prayed for in this bill.

*Dexter B. Potter*, for complainants.

*Oscar Lapham and Ezra K. Parker*, for respondents.