Illinois Steel Co. v. Jeka, 119 Wis. 122.

Illinois Steel Company, Respondent, vs. Jeka and wife,.
Appellants.

*May 9—September 29, 1903.*

*Adverse possession: Presumptions: Continuity: Parol transfers:*
*Court and jury.*

1. Actual, continuous, exclusive possession of land by a person
   and his privies in estate for twenty years, unexplained, cre-
   ates a presumption of fact that such possession and its com-
   mencement were characterized by all the requisites to title by-
   adverse possession, and that the title of the adverse claimant.
   is perfect.
2. Transfer of possession from one occupant to another may be by
   parol merely, without destroying the continuity of the ad-
   verse possession.
3. The evidence in this case, though tending to show (by such-
   facts as the execution of bills of sale of the house instead of
   deeds of the land) that the claim of defendant and his grant-
   ors was not at all times adverse, is *held* not to justify the-
   court in taking from the jury the question of adverse posses-
   sion.

Appeal from a judgment of the circuit court for Milwau-
kee county: Warren D. Tarrant, Circuit Judge. *Reversed.*

This is an action of ejectment, commenced July 1, 1897,
to recover possession of a small lot—being a part of govern-

ment lot No. 2, fractional section 33, town 7, range 22 east—situated in the Fifth ward of the city of Milwaukee. The lot in question is 125½ feet in length by 33 feet in width at one end and 39½ feet at the other. Government lot No. 2 aforesaid was a part of what is known as "Jones Island"—a low, marshy piece of land between the original channel of Milwaukee River and Lake Michigan, in the city of Milwaukee, a full description of which will be found by reference to the case of *Illinois Steel Co. v. Budzisz,* 115 Wis. 68, 90 N. W. 1019. The lot in dispute here is situated very near the lot in controversy in the last-named case, and lies within the limits of block 195, referred to in that case, and the street immediately north of said block. The defense relied upon in the present case was adverse possession for twenty years.

Upon the trial the plaintiff proved record title in itself of said government lot No. 2, and also proved that the lot in dispute was a part of said government lot, and it was admitted that the defendants were in possession of the same at the time of the commencement of the action. Thereupon the defendants introduced evidence to substantiate their claim of adverse possession. This evidence tended to show that in 1874 one John Stin, with his wife, Eva, and one son Joseph, then being twelve years of age, went to Jones Island to live, and lived in the house of one Patek about a year; that in the spring of 1875 the father built a house on the premises now in dispute, the same being then partially submerged and not fenced; that the father was drowned in the fall of that year, and that his widow and son continued to live in the house, and during the year 1876, with the help of relatives, filled a considerable space around the house with sand, gravel, and ashes, so as to make the lot above the surface of the water, which lot they inclosed with a fence during that year, which fence remained in the same place till the commencement of this action, and included the premises in dispute; that John Stin declared when he built the house that he would fill up

the ground and that it would be his; that about a year after
Stin's death his widow married one Cinova, who thereupon
came to live in the house built by Stin; that the son Joseph
lived with his mother and Cinova in the house for about three
years, and then left and boarded in the city of Milwaukee,
and allowed his mother to remain in the house without rent,
and that the mother and Cinova continued to live on the prop-
erty till the year 1884, when the mother negotiated a sale of
the premises to one Adam Paczocha for $300; that, upon
making this sale, Eva and her husband made a bill of sale of
the house, September 1, 1884, and received $300 from Pac-
zocha, and surrendered possession to him; that soon after this
the son Joseph, through his guardian, claimed that Paczocha
must pay rent to him, and afterwards a settlement was made
between Paczocha, Eva, and Joseph, by which $200 of the
$300 consideration was turned over to Joseph, and Joseph
executed a bill of sale of the house in December, 1884, to
Paczocha; that from the time of John Stin's death up to the
time of the sale to Paczocha the property was claimed by Eva
and Joseph as the homestead of the family; that Adam Pac-
zocha bought the premises for his father, Joseph, and a short
time after the purchase from Eva turned the same over orally
to his father, who paid him therefor; that both Adam and
Joseph Paczocha were informed by Eva that they bought the
lot as well as the building; that Joseph Paczocha remained
in possession after the purchase, and made further filling of
the lot, and in 1891 gave the appellant *Michael Jeka,* his son-
in-law, permission to build a house on the west part of the
lot, which he did and has ever since occupied the same as his
home.    Upon rebuttal the plaintiff introduced evidence tend-
ing to show that all that Eva and Joseph claimed to own was
the building, and also introduced a lease dated in 1876, pur-
porting to be signed by Eva Stin by a mark, in which she
acknowledged that she occupied a part of block 195 as tenant
of the plaintiff.    The signature, however, was not identified

by any one as having been made by Eva, and she stated upon
surrebuttal that she did not remember ever having signed it.

The trial court, upon motion, directed a verdict for the
plaintiff, and the defendants appeal.

For the appellants there were briefs by *Fiebing & Killilea*
and *M. C. Krause,* and oral argument by *O. J. Fiebing.*

For the respondent there were briefs by *Van Dyke & Van
Dyke & Carter,* and oral argument by *W. E. Carter.*

The following opinion was filed May 29, 1903:

WINSLOW, J.   From the foregoing statement of the evi-
dence offered by the defendants, it is evident that it was error
to take the question of adverse possession from the jury. This
evidence tended to show that the defendants and their privies
in estate had held actual possession of the premises in dis-
pute for more than twenty years prior to the commencement
of this action.   It was not necessary to show that there was
paper evidence of transfer of possession from one to the
other; the transfer may be parol and satisfy the requirement
of continuity.

It is now well settled in this state that, when there has been
continuous occupancy for twenty years, the presumption is
then raised that such occupancy was under claim of right,
and adverse to the world. *Bishop v. Bleyer,* 105 Wis. 330,
81 N. W. 413.   This principle was expressed in *Illinois
Steel Co. v. Budzisz,* 106 Wis. 499, 514, 82 N. W. 534, as
follows:

"Actual, continuous, exclusive possession for the statutory
period, unexplained, displaces the presumptions in favor of
the true owner, and creates a presumption of fact that such
possession and the commencement of it were characterized
by all the requisites to title by adverse possession, and that
the title of the adverse claimant is perfect.   The statute so
provides."

When such continuous possession has been shown, it de-
volves upon the other party to show by evidence that it was

not in fact adverse. Such fact may, of course, conclusively appear by cross-examination of the adverse claimant's own witnesses, but when such is not the case the other party must produce the necessary evidence. In the present case, while there were some facts brought out in the defendant's case which tended to show that the claim of defendant and his grantors was not at all times adverse, such as the execution of bills of sale of the house, instead of deeds of the land, we are not able to say that they were so strong as to justify the court in taking the case from the jury; nor was there anything conclusive on the subject introduced by the plaintiff in rebuttal. The question was one for the jury, under proper instructions.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

A motion for a rehearing was denied September 29, 1903.