ILLINOIS STEEL COMPANY, Respondent, vs. BUDZISZ and wife, Appellants.

*October 23—November 17, 1903.*

*Adverse possession of land: Claim of title: Court and jury.*

Upon evidence tending to show open, exclusive, continuous, uninterrupted, and hostile use and occupation of land for the statutory period by defendant and his grantors and predecessors, it is *held* that it was a question for the jury whether such occupation was under claim of title exclusive of any other right so as to constitute adverse possession.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

An action brought by respondent to recover a portion of lot No. 2 in block 193 of fractional section No. 33, town 7, range 22, situated in the city and county of Milwaukee. Respondent claims to own the absolute fee to the premises, and that it is entitled to the immediate possession thereof. The answer denies respondent's title to the premises, and alleges adverse possession thereof for a term of more than twenty years immediately preceding the commencement of this action. The action was commenced on the 20th day of June, 1897. It was agreed and stipulated that respondent has *prima facie* record title to the property described, and that defendants are in possession.

Upon the issue of the adverse possession, the evidence tended to show that Albert Herring took possession of the

premises in 1876, after purchase from one Thun; that a
fence inclosed the premises, whereon was a house, which he
occupied as his home until he sold it. In 1879 Herring sold
whatever interest he had to Frank Socha, who testifies that
he received the key to the house when he paid Herring for
the property; that he bought everything from Herring; "I
bought the house and the ground and the fence. I was in
possession of it with my family;" that he made improve-
ments on the premises, on the house, and by filling in the
lot; that he was in possession continuously up to the time he
sold it to Kriehn. As to the purchase and possession of the
property by Kriehn, there is evidence tending to support the
claim that he purchased it from Socha, who was occupying
it as his home in 1883; that he paid him the consideration;
that the elder Kriehn, father of the Kriehn mentioned in the
testimony, made the bargain for the purchase from Socha
for his son, who furnished the money; that another son moved
into the house immediately after Socha moved out, and paid
rent to the brother who had furnished the purchase money;
that he occupied the house and premises within the inclosure
for a time, and then moved out, when the brother who paid
the purchase money moved in with his family, who occupied
it and treated it as his own, living in it and keeping it as a
home until 1885, when he offered to sell the ground, house
and all, to Joseph Konkel, who bought it. Konkel took pos-
session and occupied the whole premises, paid taxes thereon,
lived on the property, made some improvements by filling
depressions in the lot, and offered the whole premises for
sale in 1893, and sold to August Budzisz. As to August
Budzisz's possession, there is evidence tending to show that
he moved in immediately after, occupied them for a year
and a half, built a barn, made other improvements, and sold
the property to the defendant *August Budzisz No. 3,* who
claims that he was the owner and in possession of the prem-
ises when this action was commenced.

In addition to these facts, it appeared from the testimony that these respective occupants were reputed to be the owners of the property, and that their possession, use, and treatment of the property was visible and readily observed by all persons who had occasion to come in view of the premises; that it was inclosed by a fence throughout the whole period of such occupancy.

Upon respondent's motion, at the conclusion of the testimony the trial court directed a verdict in its favor, and awarded judgment in accordance therewith. This is an appeal from that judgment.

For the appellants there was a brief by *Fiebing & Killilea* and *M. C. Krause,* and oral argument by *O. J. Fiebing.*

For the respondent there was a brief by *Van Dyke & Van Dyke & Carter,* and oral argument by *W. E. Carter.* They contended, *inter alia,* that the elements necessary to constitute adverse possession are defined by the statute, and the facts showing compliance with those statutory requirements must be established by clear and satisfactory proof. *Sydnor v. Palmer,* 29 Wis. 226; *Illinois S. Co. v. Budzisz,* 106 Wis. 514. When the alleged adverse possession is not "founded upon any written instrument," judgment, or decree, it must be "under a claim of title exclusive of any other right."

SIEBECKER, J. An examination of the testimony satisfies us that the court erred in directing a verdict for respondent. There is no serious controversy but that the parties occupied the premises for the respective periods mentioned, and made sales and transfers of such interests as they had. Appellant's counsel contends that the use and possession of the premises as described and set forth by the witnesses furnishes good grounds for the jury to find that the entry was made under a claim of title exclusive of any other right, and that the possession was adverse, under the statute. This contention of the appellant upon the evidence in the case is sustained by

the ruling in *Allen v. Allen*, 58 Wis. 202, 16 N. W. 610, decided as early as 1883, where the court held:

"This view of the effect to be given to evidence of long-continued occupation and use of real estate by a person in the actual possession thereof, and using the same as an owner would ordinarily use the same, as proof of adverse possession under the statute, is, we think, the proper view, and is supported by the authorities"—citing a number of cases in different jurisdictions.

In this view, the evidence presents a clear case for determination by the jury whether there was a continued, exclusive, open, and hostile use of the premises by appellant and his grantors and predecessors.

It is insisted in behalf of respondent that the undisputed evidence shows that an interruption occurred within the twenty years immediately preceding the commencement of this action. This contention is made upon the grounds that the evidence in no way tends to show that the occupancy of Mr. Herring in 1876 and of Mr. Kriehn in 1883 was in continuation of their immediate predecessors in possession. Counsel argues that the evidence material to these questions will support but one conclusion, namely, that there was a break in the possession and occupancy. This view appears to us a strained and unnatural construction of the evidence. Keeping in mind the subject-matter of these transfers, and giving to the acts and conduct of the parties in dealing with such affairs reasonable and ordinary intent and significance, it becomes manifest that a jury would be justified in finding that the use and occupancy of these premises was uninterrupted for a period of twenty years before the commencement of this action.

It is furthermore asserted, however, that the verdict was properly directed, for the reason that the undisputed evidence is that Kriehn's possession was not "under a claim of title exclusive of any other right." This argument is based on the idea that he "made no claim whatever of title to or

ownership of the land, knew that it was not his, and never claimed or pretended that it was." An inspection of the evidence germane to this question leads us to the conclusion that the contention cannot prevail, under the doctrine of adverse possession established by the decisions. What is held to be a possession "under claim of title exclusive of any other right" has been discussed and determined by this court in different cases, from among which may be cited *Allen v. Allen,* 58 Wis. 202, 16 N. W. 610; *Chicago & N. W. R. Co. v. Groh,* 85 Wis. 641, 55 N. W. 714; *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171; *Illinois S. Co. v. Budzisz,* 106 Wis. 499, 82 N. W. 534; *Illinois S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855; *Illinois S. Co. v. Jeka, ante,* p. 122, 95 N. W. 97. As stated in some of these decisions, there is a conflict of authority upon the question suggested, yet it is not an open one in this state. In *Lampman v. Van Alstyne, supra,* the court stated:

"This [conflict] has grown out of the gradual development of the law from an early period, when it was quite generally held that only occupants in good faith could acquire title by adverse possession, to the rule obviously prescribed by statute, but reluctantly adopted by the courts, doing entirely away with all necessity for judicial investigation into the hidden motives of the entry or possession and all questions of good faith respecting the same, and substituting instead the rule that open, exclusive, continuous, uninterrupted, and hostile possession for the statutory period, whether in good faith respecting boundaries or title, or whether applied to actual possession or actual possession of part accompanied by constructive possession of the balance included in a written instrument upon which the claim of title is based, does the work."

This doctrine has been fully recognized in other jurisdictions, and is explicitly set forth in the case of *Bryan v. Atwater,* 5 Day, 181:

"What, in point of law, is an adverse possession, without reference to any presumption to make out such possession?

It is a possession not under the legal proprietor, but entered into without his consent, either directly or indirectly given. It is a possession by which he is disseised and ousted of the lands so possessed. To make a disseisin, it is not necessary that the disseisor should claim title to the lands taken by him. It is not necessary that he should deny or disclaim the title of the legal proprietor. No; it is necessary only that he should enter into and take the possession of the lands as if they were his own—to take the rents and profits, and so manage with the property as the legal proprietor would manage with it. If property be so taken and so used by any one, though he claims no title, but avows himself to be a wrong-doer, yet by such act the legal proprietor is disseised. . . . In truth, to determine whether or not the possession be adverse, it is only necessary to find out whether it can be considered as the constructive possession of the legal proprietor."

We think, under the evidence, these issues should be submitted to and decided by a jury. The judgment must be reversed, and a new trial ordered.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.