CLITHERO, Respondent, vs. FENNER, Appellant.

*May 14—June 10, 1904.*

*Adverse possession: Conveyance not describing disputed strip;*
*Privity of possession: Relinquishment of rights by negotia-*
*tions for settlement: New trial: Newly discovered evidence:*
*Discretion: Appeal: Immaterial errors.*

1. The strip of land in controversy was, for more than twenty
   years, occupied and used by the owner of the adjoining lands,
   who pastured his cattle thereon and cut timber and hay there-
   from at different seasons throughout those years. He also
   inclosed it, with his own adjoining field, by a fence on all
   sides except along a creek which formed a natural barrier.
   This use was the ordinary and customary use to which the
   premises, in their condition and circumstances, were adapted,
   and was open, exclusive, and hostile to the true owner. *Held*,
   that such use and occupancy had ripened into a title by ad-
   verse possession.

2. Such occupant afterwards conveyed and transferred posses-
   sion of the whole farm to his son, the disputed strip being
   treated as a part thereof, though not covered by the descrip-
   tion in the deed. The son took possession of the whole and
   used it, including the strip, as an entirety. *Held*, that the
   parties to the transfer were privies in possession, and the
   legal rights of the father passed to the son.

3. If, after the conveyance, the possession of the land was either
   a continuance of the father's possession or the father and
   others were in possession for the son as owner, the posses-
   sion was adverse to the true owner and inured to the benefit
   of the son.

4. The fact that the adverse possessor of land, while persisting
   in his claim of ownership, negotiates for the purchase of the
   land from the holder of the legal title, to settle the dispute,
   does not establish a relinquishment of the rights acquired by
   the adverse possession.

5. Where the findings of fact by the court are fully sustained by
   the competent evidence, the admission of incompetent evidence
   is not a material error.

6. It is not an abuse of discretion for the trial court to deny a
   motion for a new trial on the ground of newly discovered
   evidence where such evidence is cumulative and impeaching
   testimony bearing upon the issues actually litigated, and it
   does not appear that due diligence was used to discover it
   before the trial.

APPEAL from a judgment of the circuit court for Columbia county: E. RAY STEVENS, Circuit Judge, *Affirmed.*

The material facts of the case, as found by the court and supported by the evidence, are as follows:

Respondent's father entered lot 4 of section 4, town of Fort Winnebago, Columbia county, in 1850. Upon complying with the requirements under the law as to payment for the land, he was entitled to a patent from the government in December, 1869. The strip of land in controversy consists of a part of lot 3 in the same section, adjoining lot 4 on the east. This strip is separated from the other part of lot 3 by a stream called "Neenah Creek." The strip lying be-

tween this stream and the boundary line between lots 3 and
4 is divided by a highway crossing its northern part. The
bank of the creek is from ten to twelve feet high, and the
channel is filled with water to the depth of a number of
feet. No fence has ever been built on the line dividing the
lots, as originally surveyed. The strip in dispute consists of
a meadow, a swale, and some high land. It is covered with
grass, and has trees on part of it. Respondent's father and
grantor cut timber on the strip as early as 1857 and as late
as 1881, and used it for pasturage from 1857 to the time he
sold it to respondent, in 1886 and 1887. During this period
he also cut hay on both parts of the strip north and south of
the highway. The northern part was cut continuously to the
time appellant asserted his right to the land, about three years
ago.

About the year 1863 or 1864 respondent's father built a
fence from Neenah creek, along the line of the highway, across
this strip and lot 4, to the south boundary line; also a fence
along the south boundary of lot 4 and this strip, to the wat-
ers, where Neenah creek and the Fox river unite. The in-
closure thus made included that part of the strip in contro-
versy south of the highway, and it was used by him for pas-
turage, with the adjoining inclosed part of lot 4, up to the
time he sold and conveyed it to respondent. After such con-
veyance, respondent, and those in possession of the premises
under him, continued to use and possess the premises, as the
father before the sale. Throughout the years from 1857 this
possession included the disputed strip; Neenah creek being
treated as the boundary on the east, instead of the line estab-
lished by government survey between lots 3 and 4. This strip
is not specifically described in the conveyance to respondent
by his father in the deeds of 1886 and 1887, but he claims
that he went into occupancy and possession of it as a part
of the lands sold and transferred to him by his father, as one
in adverse possession of the tract in controversy.

In 1892 appellant purchased lot 3, and occupied all of it
except the disputed strip. He first exercised acts of owner-
ship over the tract in dispute about three years before the
trial of this action. Respondent brought this action to quiet
title to the tract in dispute. Appellant asserted ownership
under his deed. The court awarded judgment in favor of
respondent, adjudging that respondent's father and grantor
acquired an interest in the tract in dispute by adverse pos-
session before the conveyance of 1886, that respondent
acquired his father's interest and rights to this tract by the
conveyance, that the title which appellant asserted to the
tract in dispute was vested in respondent in 1886 and 1887,
and that appellant be barred from ever claiming any right,
title, or interest therein under the claims now made him.
This is an appeal from the judgment.

*Daniel H. Grady,* for the appellant, contended, *inter
alia,* that plaintiff is bound by the description in his deed,
which did not convey any part of the government subdivision,
lot 3. He could have no benefit of his grantor's adverse
possession beyond the limits of the land conveyed. Sec.
4211, Stats. 1898; *Coleman v. Eldred,* 44 Wis. 210; *St.
Croix L. & L. Co. v. Ritchie,* 78 Wis. 497; *Smith v. Ford,* 48
Wis. 162; *Pepper v. O'Dowd,* 39 Wis. 538; *Graeven v.
Dieves,* 68 Wis. 320; *Ablard v. Fitzgerald,* 87 Wis. 516;
*Fuller v. Worth,* 91 Wis. 406; *Elofrson v. Lindsay,* 90 Wis.
203; *Hartung v. Witte,* 59 Wis. 285; *Coe v. Manseau,* 62
Wis. 82; *Lundgreen v. Stratton,* 73 Wis. 659. If a party in
possession of a disputed territory concedes that the true rec-
ord title is in another and offers to purchase from him, the
continuity of adverse possession is broken. *Jackson v. Sears,*
10 Johns. 435; *Headrick v. Fritts,* 93 Tenn. 270; *Long v.
Young,* 28 Ga. 130.

For the respondent there was a brief by *Fowler & Mc-
Namara,* and oral argument by *C. A. Fowler.*

SIEBECKER, J.  It is contended that the evidence in this case does not sustain the findings of the lower court, as given in the foregoing statement of facts.  The court found that respondent's predecessor did occupy the disputed tract.  The testimony is direct and positive, showing that respondent's father used the tract in connection with the farm he owned, described as lot 4, and other lands, from the year 1857 to the time he sold it in 1886 and 1887.  This use consisted in pasturing the fields up to the creek, and cutting timber and hay off it at different seasons, throughout these years.  He also inclosed it with a fence on all sides, except along the creek, where the bank and water formed a natural barrier, keeping his stock from straying off the field, and keeping the stock of others from entering upon it.  The use thus made of the tract in dispute, in connection with the adjoining field, was in fact an open and hostile occupancy and possession as against the true owner.  This use and occupancy is furthermore shown to have been the ordinary and customary use to which the premises, in their condition and circumstances, were adapted.  Such use and occupancy clearly indicated the extent and boundary of such adverse possession.  There is ample competent evidence in the case to warrant the court in so finding.  This court cannot, therefore, interfere with the conclusions of the trial court, holding that the acts of ownership by respondent and his father showed a claim of right to the property, and were in fact an actual, continuous, and exclusive occupancy, and had ripened into a title by adverse possession.  The nature of the occupancy constituting an adverse possession under the statutes is fully discussed in *Illinois S. Co. v. Bilot*, 109 Wis. 418, 84 N. W. 855, 85 N. W. 402, approving the case of *Clark v. Potter*, 32 Ohio St. 64, which declares:

"As the character of the possession depends on the nature and situation of the property and the use to which it can be applied or to which the owner may choose to apply it, it is evident that resort must be had to the usual and ordinary

conduct of owners of such land to determine if it is sufficient. If the possession comports with ordinary management of similar lands by their owners, it furnishes sufficient evidence of adverse possession."

*Allen v. Allen,* 58 Wis. 202, 16 N. W. 610; *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171; *Illinois S. Co. v. Budzisz,* 106 Wis. 499, 82 N. W. 534; *Illinois S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97.

It is asserted that respondent cannot maintain this action because he acquired no title to the strip in question under the deed. It is true, the tract is not specifically described or covered by the description set out in the deed of this farm from respondent's father. As above stated, the evidence supports the conclusion that the father was in possession of the disputed part, which adjoins his land, and that he treated it as a part of the farm which he conveyed to respondent, and that he transferred possession of the whole. It is also apparent from the evidence that respondent took possession of the whole, by occupying it, inclosing it, and using the part specified in the deed and this adjoining strip as an entirety. In the light of these circumstances, the presumption that the conveyance must be limited to the calls of the deed is overcome by the established facts that respondent obtained possession of the tract outside of the description as a part of the premises purchased under the deed. Such a transfer establishes a successive relationship to the tract in controversy, making the parties to the transfer privies in possession; thus conferring all the legal rights of the father, as vendor, on respondent, as his vendee. *Illinois S. Co. v. Bilot, supra,* and cases cited; *Bishop v. Bleyer,* 105 Wis. 330, 81 N. W. 413.

It is contended that there was a break in the continuity and rights under the adverse possession, because respondent did not personally occupy the premises after his purchase until 1891. The possession of the premises from the time of the execution of the deeds in 1886 and 1887, as disclosed

by the evidence, was either a continuance of the father's possession, or the father and others were in possession for respondent as owner. In either view, the possession was adverse to the true owner, and must inure to the benefit of respondent. Nor did the transaction between the parties in reference to the disputed boundary show that respondent made no claim to the tract in dispute. He persisted in his claim of ownership of the tract, though they negotiated for a settlement of the dispute. That the trial court so found, follows from the judgment it awarded. Negotiations to purchase the strip from appellant, to settle the dispute, do not in themselves absolutely establish a relinquishment of the claim of the rights acquired by adverse possession. *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720.

We cannot disturb these findings as against the clear preponderance of the evidence. These conclusions upon the material issues entitled respondent to judgment upon the facts as found by the trial court.

Several exceptions to evidence are argued upon the ground that the proof received over objection was incompetent. The evidence objected to tended to show that respondent's father at different times made declarations to various parties indicating that he was the owner of the land in dispute. At the conclusion of the testimony the court struck out parts of this evidence, but the record does not clearly show what parts were so stricken out. Since the court's findings of facts are sustained by other competent evidence, no prejudicial error was committed by these rulings upon the evidence.

It is urged that the court erred in refusing to grant a new trial upon the ground of newly discovered evidence. An inspection of the affidavits setting out what evidence appellant claims to have discovered since the trial shows that it is cumulative and impeaching testimony bearing upon the issues actually litigated. Nor does it appear that appellant used due diligence to secure what he now submits as newly

discovered evidence. Such a showing is necessary to entitle him to a new trial upon this ground. This court has repeatedly announced its adherence to the rule that the granting or refusal of a new trial upon newly discovered cumulative or impeaching evidence rests largely in the discretion of the trial court. There is nothing showing any abuse of discretion in denying the motion. *McLimans v. Lancaster,* 57 Wis. 297, 15 N. W. 194; *Schillinger v. Verona,* 85 Wis. 589, 55 N. W. 1040; *Ketchum v. Breed,* 66 Wis. 85, 26 N. W. 271; *Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542, 44 N. W. 1085; *Smith v. Champagne,* 72 Wis. 480, 40 N. W. 398; *Knopke v. Germantown F. M. Ins. Co.* 99 Wis. 289, 74 N. W. 795.

The questions we have considered are decisive of the rights of the parties under the issues of the case, and the judgment must stand.

*By the Court.*—Judgment affirmed.