STATE, Respondent, vs. LLOYD, Appellant.

*November 5—November 26, 1907.*

*Highways: Establishment by prescription: Adverse possession: Encroachments: Abandonment.*

1. The right to a particular strip of land four rods wide for a public highway may be gained by twenty years' actual occupancy and use thereof as and for a highway, laid out where it does not wholly coincide therewith because of mistake as to the true boundaries of such laid-out way.
[2. Whether a landowner may, by twenty years' encroachment upon a four-rod strip of land condemned for a highway, acquire a right to continue the encroachment, is not involved in the foregoing rule, and is not decided in this case.]
3. The principle that twenty years' occupancy of land as an owner might do, whether in good faith or bad faith, whether with knowledge of the real right of the matter or through mistake, will ripen into a title by adverse possession, applies to such occupancy for such length of time of ·a definite four-rod strip of land for a highway so as to vest in the public the right to use the strip the same as in the case of a laid-out highway.
4. If a highway be laid out and a four-rod strip of land be occupied and used as and for such a highway, the same, however, by mistake not coinciding at all points with the way as laid out, so far as the occupied and used strip does not so coincide it is a part of the public way by adverse possession, superseding the parts within the limits of the laid-out way not used and causing an abandonment thereof.
    [Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Waushara county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to recover a forfeiture under sec. 1326, Stats. (1898). The action was commenced in justice's court and certified to the circuit court upon a plea of disputed title to real estate.

The action was instituted in the name of the state by the chairman of the board of supervisors of the town of Aurora, where the land was situated.

The evidence was to this effect: Defendant and his predecessor in title, one Van Houten, were the owners and possessors of the N. W. ¼ of section 25, town 18, range 13 east, for some fifty-three years before the action was commenced. Van Houten was owner from 1849 to 1893. For about the same time near the west eighth line there was a traveled way, used as a public thoroughfare. It extended from the north in section 24 south through and beyond section 25. It was cut out across the land in 1851 by the inhabitants of the region with Mr. Van Houten's permission, looking to the establishment of a highway on the eighth line. Prior to 1853 a fence was constructed some four rods west of said line. That year a highway was laid out by public authority with such line as the center, but it was not opened or traveled east of such line prior to 1905. About 1854 the owner of the land constructed a fence about four rods east of the one before mentioned, leaving a strip of about that width for the highway, which included the way as it had been theretofore cut out and used. The old east fence was within a few feet of the eighth line, substantially straight and probably wholly west of such line. From time to time by public authority, from 1853 to 1905, work was done in maintaining the highway between the two fence lines and no work was done during such period for the maintenance of a way east of the east fence line. Travel for more than twenty years after the highway was laid out was confined by the fences to the strip of land between them, and without question on the part of the public.

In 1878 defendant's grantor, a majority of the supervisors of the town, and the owner of the land immediately to the north met in the highway as used and there was some dis-cussion about changing it to coincide with the highway as laid out, said grantor refusing to consent thereto upon the ground that the then situation had existed so long as to permanently locate the proper boundaries of the highway. Thereafter such situation continued down to 1905, except the fence on the east side fell into decay and practically for some years ceased to exist, and there were some immaterial changes in the location of the west fence. During all the time the owner of the land ignored the existence of any highway overlapping on the east the location of the east fence line, and treated it as a strip four rods wide between the old fence lines. In June, 1905, the town authorities commenced to build a grade for a trav-eled track within the boundary of the laid-out road from the north side of the land south about twenty rods, the east line of the grade as completed being west of the eighth line about two feet at the north end and ten feet at the south end. De-fendant obstructed travel upon the grade east of the old fence line, whereupon the action was commenced. The obstruction did not interfere with travel by the old track except as said track had been interfered with by the building of the grade. When defendant's grantor built the east fence line he did so mistaking the true location of the eighth line. A year or two later he declared privately to his son that his fence was too far east, but that he would let it remain till he built a new one and then move it back. More than twenty years thereafter he declined to move the fence, as before indicated, and neither he nor his grantee, the defendant, ceased from the first to occupy up to the said old line fence. The occupancy of the strip of land fenced out for the highway down to about 1878 was through mistake as to the location of the eighth line and acquiescence in the location of the fences.

At the close of the evidence a verdict was directed in plaint-

iff's favor for one dollar damages and costs, and judgment was accordingly entered.

For the appellant there was a brief by *Park & Carpenter* and *Wilbur E. Hurlbut,* and oral argument by *B. B. Park.*

For the respondent there was a brief by the *Attorney General* and *E. F. Kileen,* district attorney, and *John J. Wood, Jr.,* of counsel, and oral argument by *Mr. Wood.*

MARSHALL, J.   While a very long record is presented, it is believed that the foregoing brief statement exhibits the facts as established with sufficient clearness to warrant the trial court in holding that no jury question was involved. There was a scintilla of evidence here and there out of harmony with the general trend. The history of the subject involved extended over a period of some fifty-five years, part depending on declarations of deceased persons made some fifty years prior to the trial and much on recollection of events after the lapse of more than the ordinary span of a generation. On the whole there was in the judgment of the trial court, as it appears, nothing to materially vary with reasonable certainty the physical situation as clearly shown, and with that we agree.

We have not attempted in the statement to do more than give the general effect of the evidence, as we conclude the trial court properly viewed the case. Since it appeared that Mr. Van Houten intended to have a way for public travel established through his land with the north and south eighth line as the center when the way was blazed and cut out and made usable in 1851; that one was laid out in 1853 with such intention; that a strip of land substantially of the proper width, including the way as used, with like intention, was partly before 1853 and partly a year thereafter fenced out by Mr. Van Houten, but by mistake it was located wholly west of such line; and with like mistake it was occupied, worked, and used by the public as and for the highway as laid out

for much more than twenty years; that though Mr. Van Houten soon discovered his mistake he concluded not to rectify it except at his pleasure and continued to use his land accordingly for more than twenty years and then refused to make any change and was not, nor was his grantee, interfered with in that regard till 1905—these propositions were presented for solution to the trial court: ·

1. Is the way as fenced out, occupied, and used, by adverse possession, the legal highway, superseding the way as laid out, so far as the two do not coincide?

2. Is the way as fenced out, under the circumstances, the legal highway intended, by dedication?

3. Did the occupation of the land on the east side of the highway as fenced out, up to the east fence, ripen into a right by adverse possession?

An answer to either of such propositions in the affirmative is sufficient to dispose of the appeal.

It is considered that the first of such propositions must be answered in appellant's favor. The learned trial judge seemingly decided to the contrary upon the mistaken theory that a highway cannot be established by adverse possession, or the mistaken theory, often advanced, that possession by mistake of boundaries, the intention being to claim up to or within the calls of some written instrument or up to some ascertainable but not ascertained line, cannot ripen into a right beyond such calls or line. In other words, that a mistake of boundaries does not form a legitimate basis for adverse possession. There are expressions in some of the early cases supporting both of such theories, but the law as understood here is now firmly settled to the contrary.

That a highway may be established by twenty years' adverse possession is distinctly ruled by *Chippewa Falls v. Hopkins,* 109 Wis. 611, 85 N. W. 553. It was further there held, referring to *Lemon v. Hayden,* 13 Wis. 159, and *Wyman v. State,* 13 Wis. 663, that the use of a definite highway

State v. Lloyd, 133 Wis. 468.

by the public for twenty years with the assent of the owner is conclusive evidence of dedication, and the establishment of a highway in that way.

That occupancy up to a particular line, or between particular lines, continuing for twenty years as an owner or person having the right might so occupy the premises, whether by mistake or in good faith or in bad faith, creates a right by adverse possession, is ruled by *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171; *Wilkins v. Nicolai,* 99 Wis. 178, 74 N. W. 103; *Wollman v. Ruehle,* 100 Wis. 31, 75 N. W. 425; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 85 N. W. 402; *Gilman v. Brown,* 115 Wis. 1, 91 N. W. 227; *Ill. S. Co. v. Budzisz,* 119 Wis. 580, 97 N. W. 166; and many other cases.

As in this case the strip fenced out for the highway was unquestionably used for more than twenty years by the public as the true one, as before indicated, there can be no doubt under the authorities cited but that it became a highway by adverse use. The continued possession and use of the strip for the period mentioned raises the presumption that it was characterized by all the essentials of adverse occupancy, rebuttable only by proof of some circumstance inconsistent therewith, and mere mistake as to the true location, as the authorities indicate, is not sufficient. If one uses land of another in any way which cannot be regarded as constructive possession by such other, the holding is adverse, and if continued without interruption for the statutory period it will ripen into an absolute right to the property. The question of the nature of the possession turns on whether there is a disseisin of the true owner. Such is the statute, sec. 4207, Stats. (1898).

The principles stated are so fully discussed in the cases cited that we shall content ourselves with the foregoing brief reference to them and their effect.

It would seem that when a town for more than twenty years, pursuant to proceedings laying out a highway, opens

one on a four-rod strip of land fenced out for that purpose and thereby gains a right by adverse possession to use that particular strip for such highway, it must in all reason supersede the laid-out way so far as the two do not coincide, as held in *Almy v. Church,* 18 R. I. 182, 26 Atl. 58; *Matteson v. Whaley,* 20 R. I. 412, 39 Atl. 754; *Grube v. Nichols,* 36 Ill. 92; *Peoria v. Johnston,* 56 Ill. 45; and other cases cited to our attention by appellant's counsel. That rule as to abandonment of such part of the land within the laid-out way not included in the way fenced out and used necessarily results from the one vesting in the public the right to the used way by adverse possession. It would be highly absurd to hold that notwithstanding the acquisition of a highway by such possession, satisfying all requirements intended to be met by the one laid out, lands outside thereof, within the limits of such laid-out way, may still be claimed for the public use.

It does not seem that the authorities cited to our attention relating to the capacity of a landowner to obtain a right to a portion of a laid-out highway by merely encroaching thereon, such as *Nicolai v. Davis,* 91 Wis. 370, 64 N. W. 1001, nor cases involving the effect of mere deviations from the boundaries of a laid-out highway, such as *Randall v. Rovelstad,* 105 Wis. 410, 81 N. W. 819, nor cases involving the question of abandonment by nonuser of a platted city street before the time arrives when such street is wanted for public use, such as *Reilly v. Racine,* 51 Wis. 526, 8 N. W. 417, apply to the facts of this case, as we understand them. The highway as fenced out, worked, and used having become established by adverse possession, whether the owner of the land gained a right by adverse possession on his part to a portion of the laid-out way need not be determined. No question of mere deviation of public travel from the laid-out highway or abandonment by failing to open such highway is involved in the case.

No other question suggested seems to require attention.

The one discussed is conclusive. It follows that the judgment must be reversed, and the cause remanded with directions to dismiss the case with costs.

*By the Court.*—So ordered.