ILLINOIS STEEL COMPANY, Appellant, vs. PACZOCHA and wife, Respondents.

*January 8—April 20, 1909.*

*Adverse possession: Tacking possessions: Privity: Hostile claim: Evidence: Parol evidence affecting writings: Finding of fact: Harmless errors: Leases: Presumption as to signature: Specific denial: Disseisin by surveys: Explanatory evidence: Limiting effect: Instructions to jury: Special verdict: Burden of proof: Informing jury as to effect of answers.*

1. The privity between successive occupants of land which will permit the tacking of their possessions is not dependent upon any claim, or attempted transfer, of any other interest or title in the land, but is privity merely of physical possession not derived from or in subordination to the true owner; and the only essential of the transfer is that the predecessor passes it to the successor by mutual consent, as distinguished from a case where a possessor abandons possession generally and another, finding the premises unoccupied, enters without contact or relation with the former.

2. Where the possessions of successive occupants other than the true owner join by delivery from predecessor to successor, there is no opportunity for the true owner to become seised, and after twenty years' submission to such inability he becomes barred by sec. 4207, Stats. (1898), irrespective of the terms of sec. 4215.

3. Possession of land and voluntary transfer thereof are physical facts provable by the testimony of an eye or ear witness or any other evidentiary fact or conduct.

4. When the physical fact of possession has existed for the statutory period the law supplies the hostility and adversary intention, subject only to the qualification that such possession was not in fact derivative from and subordinate to the true title.

5. When defendants have proved as facts that they and their predecessors in privity have for twenty years continuously occupied by actual, open, notorious, and exclusive possession such as the premises were adapted to, and as was reasonably sufficient to attract attention of the true owner and put him on inquiry as to the nature and extent of the invasion of his rights, they have, by force of sec. 4210, Stats. (1898), proved that "adverse" possession which, both by sec. 4207 and sec. 4215, bars a recovery by the true owner and incidentally creates title in them.

6. The evidence in this case is *held* to sustain a verdict to the effect that there was privity of possession between defendant and his predecessors in occupancy for more than twenty years before the commencement of the action.

7. There is privity of possession between one who lived upon land with his family and the members of the family who continued to occupy it as a home after his death.

8. Where parol evidence was offered to show an agreement, the decision of the trial court on the preliminary question as to whether such agreement was reduced to writing has the weight of an ordinary finding of fact, not to be disturbed unless contrary to a clear preponderance of the evidence.

9. A mere receipt for money, or a mere conveyance which is unilateral and does not attempt to state the whole agreement made, does not exclude parol evidence as to other terms thereof.

10. The admission of parol evidence as to a conveyance or release to defendant by a person claiming some interest in the land in suit, is *held* not a prejudicial error where, at the time of such conveyance, defendant had been in complete possession of the land for some time and his right did not rest upon the conveyance but upon privity of possession with his predecessors in occupancy.

[11. Whether an instrument bearing the name "Eva Stein" "purports to have been signed or executed" by Eva Steen, within the meaning of sec. 4192, Stats. (1898), not determined.]

12. The evidence in this case is *held* to sustain a finding by the jury that defendant's predecessor in possession of the premises did not sign a lease whereby her possession became subordinate to the true title.

Illinois Steel Co. v. Paczocha, 139 Wis. 23.

13. In support of the verdict of a jury, the testimony of a witness, as to an instrument and signature before her, "I did not write that signature and did not authorize any one to write it for me," is *held* a specific denial of the signature within the meaning of sec. 4192, Stats. (1898), although by reason of confusion in other answers of the witness the jury might have understood either that she denied the act or that she merely denied memory of it.

14. The presence of surveyors locating points upon an island in a city, some of them upon the premises in suit,· which consisted of a lot fenced and occupied as residence and garden, and the failure of the occupant to protest against the entry upon his premises, do not conclusively show a disseisin of the occupant, breaking the continuity of his adverse possession, especially where the acts of the surveyors are not clearly shown to have come to his knowledge.

15. Evidence of claims made by a person adverse to the rights of defendant in land occupied by him was admissible as preliminary to and explanatory of a settlement by which such person released his rights to defendant.

16. Failure to give instruction limiting evidence to a certain effect was not error where there was no request for such instruction.

17. It is not error to instruct as to where the burden of proof is upon questions submitted for special verdict, although the jury are thereby informed as to the effect of their answers.

18. Instruction as to the burden of proof upon an immaterial question is harmless.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action of ejectment commenced July 1, 1907, to recover a tract of land on Jones Island claimed by the defendant to have been held by himself and privies in adverse possession for more than twenty years prior to the commencement of the action. The premises are the same tract of which a part was transferred by this defendant to Michael Jeka, and involved in *Ill. S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97, though the evidence in this case is not identical with that in the *Jeka Case.*

Upon the trial plaintiff's paper title was admitted. The defendant, to establish adverse possession, proved that one John Steen built upon the tract in 1875 and inclosed it, as-

serting ownership of it. The lot was largely under water, and was gradually filled to above the surface throughout the possession of all parties named. Steen indicated the limits of his possession by fences and what are called "docks." After moving into the house as his homestead, in the fall of 1876 he died, leaving his widow, Eva Steen, and a young son, who continued to occupy and improve the premises, except that the son at times went to board with relatives living in other parts of Milwaukee. Eva Steen married August Cenova in September, 1877, and they resided together upon the premises until 1884, when she sold the premises to one Adam Paczocha, a son of the defendant *Joseph Paczocha, Sr.*, who had not then reached Milwaukee, for the latter. The possession of the premises, however, did not change until two or three weeks later, when, defendant having arrived, Eva Cenova and her husband delivered over the possession not only of the dwelling house, but of the barns and outbuildings, the garden, and all included within the fences which had marked the previous occupancy, to the defendant, with the statement that such was the property which Adam Paczocha had bought for him. Thereafter *Joseph Paczocha* made his home with his family upon the premises, Mrs. and Mr. Cenova boarding with him for several weeks thereafter. *Paczocha* gave permission to his son-in-law, Michael Jeka, and also to his son, Joseph Paczocha, Jr., to build houses on the original premises, which, with the ground they stand on, are not included in the present action. He continued residence upon the premises up to about 1895, and since then has leased them to tenants. An attempt was made to show taking of a lease by Eva Steen after her first husband's death in 1876 from the predecessor in title of the plaintiff.

The jury, by a special verdict, found (1) that John and Eva Steen commenced occupancy of the premises described in the complaint more than twenty years before the com-

mencement of the action; (2) that Eva Steen did not sign
or authorize the signature of the lease from the Wisconsin
Iron Company; (3) that Joseph Steen, the son of John and
Eva Steen, did not at any time before the sale to *Paczocha*
abandon the premises with the intention of surrendering pos-
session thereof; (4) that Eva did not hold to the exclusion of
Joseph Steen; (5) that defendants and their predecessors
usually cultivated or improved the premises continuously for
a period of twenty years or more immediately preceding the
commencement of the action; (6) that defendants and their
privies, John Steen, Eva Steen, Joseph Steen, Eva Cenova,
and August Cenova, have for more than twenty years next
prior to July 1st occupied the premises by such actual, open,
notorious, exclusive, and continuous possession as such prem-
ises were adapted to and that was reasonably sufficient to at-
tract the attention of the true owner and put him on inquiry;
(7) that the defendants at the time of the commencement of
the suit were in possession; and (8) that they did not un-
lawfully withhold from the plaintiff the possession. Where-
upon, after various motions attacking the verdict, judgment
was entered for the defendants, from which the plaintiff
brings this appeal.

For the appellant there was a brief by *Kronshage, McGov-
ern & Fritz* and *John H. Paul,* attorneys, and *Walter D. Cor-
rigan,* of counsel, and oral argument by *Mr. Corrigan.*

For the respondents there was a brief by *Fiebing & Killi-
lea,* attorneys, and *Moritz Wittig* and *Henry J. Killilea,* of
counsel, and oral argument by *Mr. Wittig* and *Mr. Killilea.*

The following opinion was filed January 26, 1909:

Dodge, J. 1. The first error assigned raises the suffi-
ciency of evidence to establish privity between the several
possessors so that their possessions may be tacked. The sub-
ject of privity has been so frequently and elaborately treated
in nearly all points of view within a few years past that we

can hardly hope that more words can make plain the prin-
ciples to one who misunderstands those already uttered.
One mistake in which appellant seems to persist is that the
privity in question has some relation to title, and that claim
of title has some relation to possession. Neither is in any
material sense correct. The question is purely one of physi-
cal possession, except for the case of actual subordination to
the true owner. If there has been that physical possession,
it matters not what nor how varied the claims of title set up
meanwhile, nor indeed the absence of any. The privity be-
tween successive occupants required for the statute of limita-
tions is privity merely of that physical possession, and is not
dependent on any claim, or attempted transfer, of any other
interest or title in the land. *Bishop v. Bleyer,* 105 Wis. 330,
81 N. W. 413; *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 82 N.
W. 534; *Ill. S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97; *Ill.
S. Co. v. Budzisz,* 119 Wis. 580, 97 N. W. 166; *Clithero v.
Fenner,* 122 Wis. 356, 99 N. W. 1027; *Closuit v. John Ar-
pin L. Co.* 130 Wis. 258, 110 N. W. 222. Counsel's con-
fusion is illustrated by his quotation from the *Budzisz Case,*
106 Wis. 515, 82 N. W. 534: "The calls of a deed . . . limit
the right as a matter of law." But they do not limit the
fact, and, if the fact of possession persist through the ap-
pointed time, new rights grow up. If the possessions join by
delivery from predecessor to successor, there is no opportu-
nity for the true owner to become seised, and, after twenty
years' submission to such inability, he becomes barred by
sec. 4207, Stats. (1898), irrespective of the terms of sec.
4215, Stats. (1898). Possession and voluntary transfer
thereof are physical facts provable by the testimony of an
eye or ear witness or any other evidentiary fact or conduct.
The only qualification to the possession is that it must be
such as to exclude the true owner; not derived from or in
subordination to him. The only essential of the transfer is
that the predecessor passes it to the successor by mutual con-

sent, as distinguished from the case where a possessor abandons possession generally, and another, finding the premises unoccupied, enters without contact or relation with the former, as in _Larzelere v. Wood,_ 136 Wis. 541, 117 N. W. 1013. Such are the rules declared and enforced by the above decisions of this court, and it is but misdirected industry to quote from or cite our own earlier utterances, or those of other courts, in apparent derogation, which are either overruled or discredited, of which confessedly there are some.

Considering the evidence in light of these rules we find: John Steen built the house, inclosed the premises so as to mark limits of possession, and moved into the house with his family, and later died. His family, consisting of wife and minor son, remained there, continuing to occupy the premises as a home and to exercise all acts of ownership and improvement thereon. Privity between them and John Steen is, of course, clear. _Mielke v. Dodge,_ 135 Wis. 388, 115 N. W. 1099. Their occupation continued not adverse to each other, but clearly excluding possession by any one else. The evidence is that Eva, while admitting rights in the property in John, her son, set up rights at least of occupancy in herself, which she would of course have if her deceased husband's claim of ownership had been well founded. _Mielke v. Dodge, supra._ But, at any rate, she had full possession, just such as an owner would exercise. The next transfer of possession was in 1884, when Eva Steen, then Cenova, surrendered possession to the defendant. She at that time surrendered to him the whole premises, including the house with outbuildings, garden, fences, etc., and she accompanied that act by the statement that that was the property which had previously been sold to his son for him. Not only was there no break or interruption of occupancy, but _Paczocha_ went in before Eva Steen went out, she and her husband remaining as boarders for several weeks. This presented a clear case of the joining of possessions; the incoming occupant taking by con-

sent immediately from the preceding occupant, with no possibility for an intervening disseisin. *Ill. S. Co. v. Jeka, supra; Clithero v. Fenner, supra; Closuit v. John Arpin L. Co., supra.* It must be remembered that on this occasion there was no attempt at any written expression of the understanding or intent with which the physical change of possession was made. And, even if there had been, the acts of the parties would still have been so clearly significant of a mutual purpose to transfer the possession of the whole premises as to establish that fact notwithstanding there had been a written conveyance at the same time of some limited portion of, or title in, them. *Id.* Since that event it is practically undisputed that the defendant, by himself and tenants, has continued the actual possession and enjoyment of the whole premises so received from Eva Cenova with acts of improvement and domination such as to suggest ownership. This evidence is well-nigh conclusive of privity of possession, but for the purpose of this assignment of error it need only tend to establish such fact, which we hold to be the case.

2. In this immediate connection is the very earnest contention of appellant's counsel that no parol evidence of the agreement or understanding of the parties was admissible, because they reduced their agreement to writing; and error is assigned upon the admission of much parol evidence on that ground. This raised a question of competency of certain offered evidence. The court ruled that, until it was shown that the parties had reduced their agreement to writing, oral evidence of such agreement was admissible, which was of course correct. The plaintiff undertook to show by cross-examination and otherwise that at the time Adam Paczocha entered into the agreement for the purchase of these premises such agreement was reduced to writing. Waiving the question whether a writing then made would be in any wise exclusive of parol proof as to the conduct and conversation of the parties at the time of the actual transfer of pos-.

session to the defendant *Joseph Paczocha* some two or three weeks later, still the question presented was one for decision by the court preliminary to his ruling on the admissibility of the parol testimony, and the court's decision thereon has the weight of an ordinary finding of fact. *Hupfer v. Nat. D. Co.* 119 Wis. 417, 96 N. W. 809. He evidently reached the conclusion that it had not been established that any such written expression of the parties' agreement had been made, although some kind of a writing was drawn, and decided that because of such failure to prove the preliminary fact the parol testimony should be admitted. In this we can find no error. But one witness testified on the subject, namely, Adam Paczocha; and, while he said in response to a leading question that the agreement was reduced to writing, he explained fully what he meant by that, namely, that he and both the Cenovas told the scrivener about their agreement, and he wrote some paper. Witness had no knowledge as to what was written. That writing had passed out of the manual control of the defendants. Although, apparently, it was in court as a part of a former deposition, neither party chose to offer it in evidence. The burden was upon the plaintiff to prove that it was at least an attempt to put in writing the agreement made, and not some collateral or incidental paper in the course of effectuating the same. So far as the evidence went, it might have been a mere receipt for the money, or, as it probably was, a mere conveyance such as the scrivener deemed necessary to effectuate the agreement or part thereof. Such an instrument, of course, is in its very nature unilateral, and not such an attempt to state the whole agreement as to exclude parol evidence as to other terms thereof. *Twohy v. Estate of McDonald,* 108 Wis. 21, 83 N. W. 1107; *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681; *Seeger v. Manitowoc S. B. Works,* 120 Wis. 11, 97 N. W. 485; *Lathrop v. Humble,* 120 Wis. 331, 97 N. W. 905; *Mueller v. Cook,* 126 Wis. 504, 509, 105 N. W. 1054. Indeed, there

was no proof that such writing was executed or signed by any one. We are unable to hold the court's decision adverse to clear preponderance of the evidence as would be necessary to convict it of error in admitting even the evidence as to the parol agreement made by Adam Paczocha with Eva Cenova. The writing made by Joseph Steen some two months after the change of possession took place is so immaterial to the issues that no prejudice could result from parol evidence as to the making or the terms thereof. Defendant had been in complete possession of the premises for six weeks or more, and no change or modification took place, when, by reason of a settlement between Mrs. Cenova and her son and the payment by her to him of a part of the purchase price, he made such conveyance or release of his interest as the scrivener thought fit to draw. Defendant's right rests, not on the conveyance of any title from Joseph Steen, but on the transfer of possession of the premises. We discover no prejudicial error in admission of the evidence. These views dispose of multitudinous assignments of error upon admission of specific testimony *ejusdem generis.*

3. It is claimed that a lease was taken by Eva shortly after her first husband's death from the plaintiff's predecessor in title, so that her possession from that time was not adverse. We cannot think the evidence of such alleged fact conclusive to overcome the adverse finding by the jury. A lease was produced dated in 1876, bearing the name of "Eva Stein," with nothing to indicate that the signature had been written by any other person for her. A witness was offered who was present when another man went about and sought to obtain leases in large number from residents on Jones Island. He finally admitted that he had no affirmative recollection that the Eva Steen in question wrote that signature, or that it was written in her presence by some one else, or that she gave any authority to any one to write it. At most he had a general memory that they went about on the island and that every-

body either signed or authorized somebody else to sign their names. Eva Cenova testified, with some confusion, evidently resulting from excitement and from inability to either understand questions or express herself, that she did not write that signature, that she did not tell anybody to write it for her, and she did not hold a pencil for somebody to write it. Further, she testified that she was unable to write her name and she was unable to understand English at all, or German to any extent; that she remembered the occasion of one of these men coming to her house soon after her husband's death and asking her for some money, to which she responded that she had none, and he then went away. After he left she understood he came from the rolling mills, or rather went back to the rolling mills, but she did not know whom he represented. In this situation surely the jury had ample evidence from which to find that she did not execute any such lease.

It is, however, claimed that by sec. 4192, Stats. (1898), the instrument proved its own execution *prima facie,* and that she did not, in the language of that section, "specifically deny the signature or execution." Waiving the question whether an instrument bearing a name different from that of a party, neither the same in spelling nor *idem sonans,* "purports to have been signed or executed" by that person, still we think the statute requiring specific denial was fully satisfied. With the instrument and signature before her she stated: "I did not write that signature and did not authorize any one to write it for me." True, the jury might have understood from the confusion of some of the other answers that she did not deny the act, but merely memory of it; equally they might have understood that she did. If so, we can conceive no more direct form of specific denial of execution.

4. A further claim is made that disseisin was accomplished by the owner on three occasions when surveyors, employed by plaintiff or some of its predecessors in title, went

onto the island and made careful surveys locating the houses
and making plats, protracting such surveys over some months.
The first of these surveys, at least, was made by the city en-
gineer and his assistant, though probably not in their official
capacity. The presence of surveyors locating points upon
this island, though some of them were upon the identical
premises, was not so significant as to conclusively establish
invasion of defendant's possession sufficient to constitute a
disseisin. In a city such work is so frequent and so fre-
quently under municipal sanction that the failure of an oc-
cupant of premises to protest against the entry on his prem-
ises for the purpose of measurement or running lines is not
necessarily to be construed a submission to a title held by the
employer of the surveyors, especially when, as here, the acts
of the surveyors are not clearly shown to have come to the
knowledge of the occupant. The situation with reference to
a lot fenced and occupied as residence and garden is very
different from that discussed in *Ill. S. Co. v. Budzisz,* 115
Wis. 68, 86, 90 N. W. 1019, where the adverse possession
was a rather vague assertion of sovereignty over a large area
of waste land with very inconsiderable and ambiguous acts
of domination which might well be deemed contradicted by
some months of surveying, driving stakes, etc., over the whole
tract. The same surveys were proved in previous cases and
not held to be conclusive against continuity of adverse pos-
session. *Ill. S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97;
*Ill. S. Co. v. Jeka,* 123 Wis. 419, 101 N. W. 399; *Ill. S. Co.
v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402. In-
deed, any effect of such surveys as re-entries would seem to
be denied by sec. 4209, Stats. (1898), requiring re-entry to
be followed by suit within one year.

5. Some evidence that Joseph Steen made claims of own-
ership either entire or in common with his mother during
the time she continued to reside on the premises and while
he was boarding elsewhere is assigned as error. There was
some evidence that he authorized her occupation for a con-

sideration, hence that he was in possession at the time, which removes the objection urged that declarations as to character of possession are admissible only from one exercising it. Other claims made by the same person adverse to defendant's right were properly admitted as preliminary to and explanatory of the transaction of settlement with him. They might properly, by instruction, have been limited to that effect, but plaintiff made no such request.

Certain other rulings on detail evidence are suggested by appellant with little or no argument in support of the assignments of error. We think all of them either so within the administrative discretion of the trial court or so obviously nonprejudicial that discussion of them is not justifiable in this opinion.

6. Certain instructions are assigned as errors, several to the effect that the burden of proof was on plaintiff or defendant because they informed the jury of the legal effect of an affirmative answer. This criticism is hypercritical. It is not error to so instruct. *Banderob v. Wis. Cent. R. Co.* 133 Wis. 249, 265, 113 N. W. 738.

Instruction that burden of proof was on defendant as to third question, whether Joseph Steen abandoned, was of no prejudice, because the question itself was immaterial. Eva was shown conclusively to have continued actual possession from John Steen's death up to the transfer of it to the defendants independently of any acts of *Joseph*.

A series of errors are assigned upon failure of the court to require the jury to find as a fact that the several possessions were hostile, adverse, and under a claim of title. These present the same confusion as pointed out in the first division of this opinion. The possession needing to be proved and found by the jury is a physical fact, not a state of mind. When the physical condition has existed for the statutory period the law supplies the hostility and adversary intention, subject only to the qualification that such possession is not in fact derivative from and subordinate to the true title.

That is fully established in this case. If defendants have proved as facts that they and their predecessors in privity have for twenty years continuously occupied by actual, open, notorious, and exclusive possession such as the premises were adapted to, and as was reasonably sufficient to attract attention of the true owner and put him on inquiry as to the nature and extent of the invasion of his rights, they, by force of sec. 4210, Stats. (1898), have proved that "adverse" possession which, both by secs. 4207 and 4215, Stats. (1898), bars this action and incidentally creates title in them. *Meyer v. Hope,* 101 Wis. 123, 125, 77 N. W. 720; *Wollman v. Ruehle,* 104 Wis. 603, 606, 80 N. W. 919; *Bishop v. Bleyer,* 105 Wis. 330, 332, 81 N. W. 413; *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 507, 514, 82 N. W. 534; *Gilman v. Brown,* 115 Wis. 1, 5, 91 N. W. 227; *Ill. S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Ill. S. Co. v. Budzisz,* 119 Wis. 580, 585, 97 N. W. 166; *State v. Lloyd,* 133 Wis. 468, 473, 113 N. W. 964. Such was the question submitted to the jury.

We think the foregoing consideration of principles disposes, adversely to appellant, of substantially all the assignments of detail errors, except perhaps certain complaints of remarks made by court or defendants' counsel, which do not present matter of sufficient moment to warrant discussion, certainly not to require reversal.

*By the Court.*—Judgment affirmed.

Winslow, C. J., took no part.

Upon a motion for a rehearing there was a brief for the appellant by *Van Dyke & Van Dyke, Walter D. Corrigan, John H. Paul,* and *Theodore Kronshage,* attorneys, and *Kronshage, McGovern, Goff, Fritz & Hannan,* of counsel, and for the respondents a brief by *Fiebing & Killilea,* attorneys, and *Moritz Wittig* and *H. J. Killilea,* of counsel.

The motion was denied April 20, 1909.