## McANALLY et al. v. TEXAS CO. et al.*

### No. 715.

Court of Civil Appeals of Texas. Eastland.

Oct. 17, 1930.

Rehearing Denied Dec. 5, 1930.

*Writ of error granted.

948

Beall, Beall & Beall, of Sweetwater, Ferrell & Yates, of Roby, and Davidson, Doss & McMahon, of Abilene, for appellants.

J. M. Patterson, of Austin, H. S. Garrett, Thompson & Barwise, Zweifel & Tuohy, and John A. Braley, all of Fort Worth, Butts & Wright, of Cisco, J. A. Stanford, Jr., of Waco, and Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellees.

LESLIE, J.

This is an appeal from the district court of Fisher county. There are numerous parties who, by reason of mutual interests, fall into four groups. These groups will be referred to as (1) J. B. McAnally et al., plaintiffs below, appellants here; (2) Bolton Smith et al; (3) Minnie Polk et al., both defendants below, appellants also; and (4) the Texas Company et al., defendants below, appellees here. This suit is the result of a consolidation of three suits in the trial court, and the above groups assumed in the new suit the relation above indicated.

From the viewpoint of each group of litigants, the suit is essentially one in trespass to try title, both by the direct and in the various cross actions. McAnally et al. sought to recover title and possession of three several tracts of land; Bolton Smith et al. and Minnie Polk et al. sought to recover one of these tracts, and the Texas Company, grantee of Mrs. Maggie A. Teagarden, a widow, laid claims to these lands and sought to remove as clouds from its title the claims of each of the other groups.

In the trial court a verdict was instructed against Smith et al. and Polk et al., and the remaining parties, McAnally et al., plaintiffs, the Texas Company, and said Teagarden et al., were permitted to go before the jury on the single issue of limitation. The issue was resolved by the jury in favor of the appellees, and the claims of the other litigants were removed as clouds from the title to the lands. From a judgment based on the jury's verdict, this appeal is prosecuted.

McAnally et al. sued for three tracts of land; one containing 123 acres, alleged to be situated in the north part of the south ½, Sec. No. 8, Blk. R, W. E. Richardson surveys, Fisher county, Tex.; a second, containing 28 acres, situated likewise; and a third, containing 68½ acres, alleged to be situated in section 7 or 8 of said surveys. These plaintiffs deraigned title through J. B. Coleman and J. D. Davidson, who are shown to be the common source of title.

Bolton Smith et al. sought to recover the 68½ acres, alleging it to be the north 68½ acres of section 7, and they disclaimed as to any interest in any other lands. They deraigned title through Smith and Drought.

Minnie Polk et al. made claims to the 68½ acres, described it substantially as did Smith et al., and also disclaimed as to other lands. They deraigned title through Smith and Drought.

The Texas Company derived its title through Mrs. Maggie A. Teagarden, a widow, but relied on a limitation title alleged to have been perfected by her and her predecessors in title.

The claims of the respective litigants arose from facts and circumstances substantially these: J. B. Coleman and J. D. Davidson (common source) formerly owned sections 7 and 8, Blk. R, Richardson surveys, Fisher County, Tex. They conveyed the north ½ of section 8 to Mary E. Berg, and that tract is not here involved. September 14, 1889, Coleman and Davidson conveyed to A. A. Sanders "a part" of section 8, particularly described by metes and bounds, and stating that the tract contained 257.63 acres. At this point it is well to observe that Mrs. Teagarden, the Texas Company, and the other appellees, as to that matter, contend that Sanders purchased a particular tract of land, inclosed it, and maintained adverse possession of it during his occupancy, and transferred same to his successor or vendee, who maintained like possession, and who, in turn, passed same by legal transfer on down to the Texas Company. June 25, 1919, A. A. Sanders, by deed with

like description as that in the deed to him, conveyed the land to W. A. Hill and Maggie A. Teagarden. June 25, 1921, W. A. Hill conveyed by deed, with like description, his interest in the land to Maggie A. Teagarden. May 10, 1928, Maggie A. Teagarden conveyed the land to the Texas Company. The description of the land in this conveyance differed from that in the preceding deeds, but is the one embodied in the judgment awarding the lands to the Texas Company et al. A survey of the land was evidently made, in view of the conveyance by Mrs. Teagarden to the Texas Company. In this last conveyance it is stated that the tract contained "257.65 acres," as in previous deeds, but that statement is followed in this last deed by the added expression, "more or less, it being the intention of this deed to convey all land under fence now or heretofore enclosing the Maggie A. Teagarden tract, whether on Sur. No. 8, Blk. 'R,' or other survey or surveys."

McAnally et al. would limit the claims of the appellees to the lands embraced in the field notes of the original deed to Sanders, thereby leaving in Coleman and Davidson originally, and now in this group of appellants, the 123.7 acres out of the north part of the south ½ of section 8. They claim that the land was not conveyed as a tract or identity possibly containing an excess of acreage, but as strictly 257.63-acre tract.

The circumstances giving rise to the controversy over the 68½ acres are more involved. December 31, 1888, Coleman and Davidson conveyed to J. M. Ojerholm the north ½ of section No. 7, describing the land by metes and bounds, and stating the tract to contain 320 acres. As part of the consideration for this conveyance, Ojerholm executed and delivered to Coleman and Davidson a series of vendor's lien notes which passed in due course into the hands of Smith and Drought, a firm composed of Frances Smith and H. P. Drought. With these notes was transferred the lien securing the same, "including * * * superior title" to the land the same as though the assignee of the notes had been the "original owners and vendors of said land." Thereafter Smith and Drought brought suit on the notes and foreclosed the vendor's lien on the land, describing it as in the original deed from Coleman and Davidson to Ojerholm, and calling for 320 acres. On February 6, 1897, Smith and Drought obtained a judgment as prayed for on the notes, with foreclosure on said lands as described in the original deed. The judgment was appealed from, as may be seen in Smith v. Ojerholm (Tex. Civ. App.) 51 S. W. 37. In satisfaction of this judgment, Ojerholm, on September 23, 1902, by warranty deed, sold and conveyed to Frances Smith and H. P. Drought his title and interest in the land, describing it as in the original deed to him of December 31, 1888. This conveyance (September 23, 1902) was made by Ojerholm

after he had accepted from Coleman and Davidson on December 19, 1892, a deed of correction of the original deed (1888), and also after Coleman and Davidson had parted with the Ojerholm notes, lien, and superior title as recited in the transfer just noticed of March 31, 1890. The deed of correction recited it was executed to correct the field notes in the original deed, that it was not intended to affect the vendor's lien in that instrument, and that there was a shortage of 57 acres in the original conveyance, and that Ojerholm was to have a proportional abatement in the purchase price of the land. The correction deed was filed for record February 27, 1893, almost nine years prior to the time Ojerholm conveyed the land to Smith and Drought in satisfaction of the judgment.

In this group of facts originates the lawsuit over the 68½ acres, in so far as the three groups of appellants are concerned. In these circumstances lay the potential boundary suit, the issues in which were eliminated by the instructed verdict against Smith et al. and Polk et al. For that reason this opinion will not be lengthened by incorporating various field notes; other phases and contentions being deemed controlling.

To reflect the record more fully, although deemed a collateral matter, it will here be observed that on April 24, 1891, Coleman and Davidson conveyed to Augustus Johnson their "unsold portion South part of Sec. No. 7, Blk. R, Richardson Survey," describing it by metes and bounds, and calling for 203⅕ acres of land.

Since the trial court sustained a plea of estoppel as against Smith et al. and Polk et al., the facts furnishing the basis for the estoppel will be more particularly noticed. These facts relate exclusively to the 68½ acres. Bolton Smith et al. would give effect to the Coleman-Davidson original deed to Ojerholm (1888), and they claim that, when they became the owners of the Ojerholm notes, lien, and superior title, foreclosed on same, and received for the judgment from Ojerholm a conveyance of land with a description as in the original conveyance, they thereby became the owners of the north 68½ acres of said section 7, unaffected by the subsequent correction deed to which they were not parties, and whose field notes they contend do not cover this acreage at all. Bolton Smith et al. admit that the 68½ acres claimed by McAnally et al. as being the north part of section 7 "is practically the same land claimed by" them. And in this same connection and relating to the claims of Polk et al., Smith et al. contend that the deeds, presently to be noticed, from Frances Smith to James M. Davis and H. P. Drought to James M. Davis (Polk et al. tracing title through these two deeds), as shown by the boundaries describing the land included therein, are to a tract of land entirely different from and to the south of the 68½-acre tract claimed by

them. In this manner Bolton Smith et al. would dispose of the claims of Minnie Polk et al., and, as to the claims of McAnally et al., through Coleman and Davidson, they rely on the alleged superior title acquired as above indicated, and unimpaired, as they claim, by the correction deed, etc.

McAnally et al. would look to the deed of correction solely for the determination of the rights of Polk et al. and Smith et al. to any of the lands in controversy, and in so doing urged the estoppel against both groups of litigants on these specific grounds: (1) That Coleman and Davidson, owning the notes, lien, and superior title to the lands as described in the original Ojerholm deed (1888), sold and conveyed the same to Smith and Drought, who, being so possessed, elected to sue Ojerholm et al. on the notes and for a foreclosure of their lien on the land rather than to rescind by suit in trespass to try title or otherwise; that, in so electing, Smith and Drought confirmed the sale and also the superior title to the land in Ojerholm. (2) That, having prosecuted the suit to judgment with foreclosure, and having sold and transferred the judgment to Ojerholm, who in satisfaction thereof sold and conveyed to Smith and Drought his title and interest in the land, they (Smith and Drought) thereby and thereafter derived whatever title they had in the original Coleman and Davidson lands solely from Ojerholm, whose power to convey any land whatever therein was limited to that embraced in the correction deed which had been of record for several years. (3) That Smith and Drought recognized that they acquired in this conveyance from Ojerholm merely the lands called for in the correction deed in that Frances Smith and H. P. Drought, by separate deeds respectively of date April 26, 1901, and February 23, 1903, conveyed to James M. Davis the 247½-acre tract of land out of the north part of section 7, and in each such deed particularly described the land by metes and bounds substantially those found in the deed of correction.

Of course, if the estoppel is well founded, it relegates Smith et al. and Polk et al. (all claimants under Smith and Drought) to the correction deed, and necessarily excludes them from the 68½ acres, leaving that tract for contest between McAnally and the Texas Company on their respective contentions.

The claimants of Minnie Polk et al. originate in this manner. James M. Davis transferred what he acquired from Smith and Drought to E. R. Rector, who in turn conveyed the same to H. Ubben through whom Minnie Polk, and that group of appellants, deraigned title. This group contends that the description in the deed from Smith and Drought to Davis and Davis to Rector and Rector to Ubben, when properly interpreted, conveyed the north 68½ acres of section 7, and that through this chain of title their interests come down to them. They seek, by the application of certain rules of construction, to show that, under the circumstances surrounding the conveyances by Smith and Drought to Davis, etc., the particular description of the land (247½ acres) by metes and bounds in those respective deeds should be disregarded or made to yield to the descriptions general in nature, and which they contend represent the true intent of the parties.

■■ In other words, Polk et al. present that a conflict exists as between such general description of the land conveyed by the Smith and Drought deeds and the particular description also found therein. The general description would, it is contended, embrace the 68½ acres in controversy. On the other hand, the particular description would not do so, and by it the south line of the 68½ acres would evidently coincide with the north line of the land conveyed by Smith and Drought in their respective deeds. The first and general description referred to by Polk et al. makes the deed convey "all * * * of land * * * situated in Fisher County, Texas, and out of the north end of Sec. No. 7 of 640 acres * * * containing 247½ acres described by metes and bounds as follows. * * *" It is this description rather than the specific and, as we believe, complete description of the land, immediately following it, which Polk et al. contend should be adopted, and they cite authorities and advance rules of construction which they maintain require the giving of controlling effect to the general description of the land. These authorities and persuasive arguments in support of this contention do not convince us that such construction should be given the language of these deeds. The language is too clear, and, considering the general context of the deeds, it appears to us that the terms, "the north end" and "south end," used in reference to the section, were used in the sense of meaning "out of the north side or end," or the "south side or end," as contended by Smith et al., rather than meaning the extreme north or south end of the survey. The Drought to Davis deed adopted the particular description of the Smith to Davis deed. These descriptions are not imperfect or doubtful. In fact, it is doubtful if any rules of construction may be here resorted to, but, if so, we think that each deed calls for application of the simple rule that a particular description in a deed will ordinarily control a general description. In Tex. Jur. vol. 7, p. 126, § 7, it is said: "It is a general rule, also, that when land is described by clear and distinct metes and bounds, from which the boundaries can be readily ascertained, such description will control any general words added thereto. In such a case the specific and particular description about which there can be no mistake renders it unnecessary to invoke the aid of the general one."

In Phillips' Heirs v. Porter, 3 Ark. 18, 36 Am. Dec. 448, the rule is announced: "When lands are first described generally, and afterwards a particular description is added, that will restrain and limit the general description."

The ultimate disposition of this appeal doubtless would not require that we pass on the contentions just noticed, but our views on the same are indicated for whatever they may be worth to those affected by this opinion and its judgment. In any event, whatever is here said defines more specifically the claims of Polk et al. to the 68½ acres. If we are correct in giving effect to the particular descriptions found in these deeds. the foundation falls from under the claims of Polk et al. to this tract.

Without restating the circumstances urged as an estoppel against the privies of Smith and Drought, it is our opinion that Smith and Drought, by filing suit on the Ojerholm notes and foreclosing the lien on the land securing the same, thereby elected to confirm in Ojerholm the superior title which they had theretofore acquired from Coleman and Davidson. It is our conclusion that such rights as Drought and Smith acquired thereafter in any of the lands were referable solely to the conveyance of Ojerholm to them in satisfaction of the judgment, and it is our further opinion that his ability to convey land was limited to those described in the correction deed of which Smith and Drought had constructive notice.

By adopting the foreclosure route, Smith and Drought lost all contact with the superior or legal title vested in them by virtue of the conveyance to them by Coleman and Davidson of the notes, lien, title, etc. Gardener v. Griffith et al., 93 Tex. 355, 55 S. W. 314; Bartley's Heirs v. Harris et al., 70 Tex. 181, 7 S. W. 797, 798; Golden West Oil Co. v. Golden Rod Oil Co. (Tex. Civ. App.) 285 S. W. 631; Zeigler v. Sawyer (Tex. Civ. App.) 16 S.W.(2d) 894.

In the authority first cited, it is said: "When, under an executory contract of sale of land, the vendee has made default the vendor has an election to sue for the land or for the purchase money; and the general rule is that, by electing the latter remedy, he deprives himself of the right to claim the land."

Further on in the opinion, and in the last conclusion, it is stated: "When the grantor has finally lost the right to claim a rescission of the contract, the legal title vests in the grantee."

In the second authority cited, the rule is stated thus: "Whatever may have been the rights of Elgin as trustee under the vendor's lien, his obtaining a decree of foreclosure concluded his assertion of the superior title remaining in the vendor while the purchase money is unpaid"—citing authorities.

Had Ojerholm paid the judgment off with money, he would have remained the owner of the land, delimited by the correction deed.

Had he satisfied the judgment by conveying to Smith and Drought a tract of land in another county, or a distant state, he would have remained the owner of the tract of land as described in the correction deed. On the other hand, after accepting the conveyance in satisfaction of the judgment, Smith and Drought's relation and rights to the 68½ acres are aptly stated in Devlin on Real Estate (3d Ed.) vol. 2, p. 1576, § 850c. "The rule prevailing with reference to contracts to convey, that all prior stipulations of the parties are merged in the deed finally delivered and accepted, also prevails where a second deed has been executed as a substitute for, and a correction of, a prior deed. If the deed delivered as a substitute omits lands contained in the prior conveyance, the grantee and his heirs are estopped from claiming them. Where a subsequent deed has been executed in place of a prior deed misdescribing the land intended to be conveyed, the possession by the grantor of the land first conveyed is adverse to the grantees. If a grantee accepts a deed of correction in lieu of a prior deed executed by the grantor, and the grantee sells the land conveyed to him by the subsequent deed, he is estopped from claiming title to the land conveyed by the prior deed. His acceptance of the second deed constitutes an election to take the land conveyed by the corrected deed, and operates as a relinquishment of title to the land conveyed by the first deed, as one who accepts the benefits of a conveyance must adopt the whole of it."

We are of opinion that the holding of our Supreme Court in the case of Doty et al. v. Barnard et al., 92 Tex. 104, 47 S.W. 712, 714, is ample authority to justify this court in holding that Drought and Smith and those claiming under them are estopped by the recitals of the correction deed, of which they had constructive notice, to claim any larger estate in said section 7, than that indicated by the description in that deed. In the case cited, one Rowland, claiming under the grantee of an assignee in bankruptcy, accepted from the heir of the bankrupt a conveyance "for the purpose of supplying any * * * deficiency in the title * * * caused by the burning * * * of the records," describing the land as the same conveyed by the assignee in bankruptcy, and giving its metes and bounds. It was thereafter held such grantee and his privies were estopped from claiming any lands under the conveyance by the assignee in bankruptcy *which were not included in the boundaries in the subsequent conveyance by the heirs.*" (Italics ours.) In the course of the opinion, the court say: "All persons claiming under Rowland by conveyance subsequent to the deed from Doty and wife to him are bound by the recitals con-

tained in the latter deed, and could acquire no right under the deed from Williams, assignee, to Odom, to land not embraced in the substitute deed from Doty and wife to Rowland. Hardy v. De Leon, 5 Tex. 243."

We quote further from the opinion: "By accepting the deed from Doty and wife, and selling the land within a short time according to the description given in the said deed, Rowland estopped himself to claim under the deed from Williams to Odom any land not included in the deed from Doty and wife to him."

The court correctly sustained the plea of estoppel.

Other propositions by Polk et al. and Smith et al., to the effect that the court erred in refusing to quash the depositions of Ojerholm, are overruled. The grounds for quashing same were: "Objection is made to said interrogatories as a whole and to their introduction in evidence, for the reason that, as shown by his own answers, that witness was furnished, prior to the taking of said deposition, with copies of all said interrogatories and cross-interrogatories propounded to him, and had already prepared his answers thereto * * *".

We are cited to Greening v. Keel, 84 Tex. 326, 19 S. W. 435, and Phœnix Assurance Co. v. Freedman (Tex. Sup.) 19 S. W. 1010, 1011, as authorities requiring the quashing of the depositions under the circumstances.

██ We find it unnecessary to pass upon the question presented, but, without sanctioning the method by which the answers to the direct and cross interrogatories were procured, it is believed that the error, if any, was and should be held as harmless. The depositions were apparently offered for the purpose of proving acceptance by Ojerholm of the correction deed, and for obvious reasons the admission of the depositions was resisted by the complaining parties. However, the deed was admissible on the question of acceptance without the aid of the depositions, and made a prima facie case on that point, especially in the absence of proof by any one that Ojerholm did not accept the same. The deed purported to be for the purpose of correcting an error in the description of lands previously conveyed by the said grantors to the said grantee, and is provided that the purchase price should be abated in proportion to the reduction of acreage. The deed has been duly registered in the clerk's office of the proper county, and within a reasonable time after its execution, and bears on its face no suspicious circumstances. Therefore it is believed that no reason exists why the deed should not come under the general rule, and its recordation raised the presumption of its acceptance in the absence of proof to the contrary.

In Devlin on Deeds (3d Ed.) vol. 1, p. 499, it is said that the registration of a deed is prima facie evidence of its delivery, and that the presumption of its delivery arising from the registration is not conclusive, but may be rebutted by other evidence.

In the case of Luzenberg v. Bexar Bldg. & Loan Ass'n, 9 Tex. Civ. App. 261, 29 S. W. 237, 238 (error refused), the court, in passing on the question arising upon the admission of a deed in evidence without testimony of its acceptance, said: "The sixth assignment asserts that there was error in admitting the deed to A. A. Brown, wherein it was recited that Brown assumed the mortgage, for the reason that there was no allegation or proof that the deed had been delivered to Brown, or accepted by him. This objection to the deed evidently came from the defendant Brown. The fact that it was placed on record raises the presumption that it was delivered. Holmes v. Coryell, 58 Tex. 688."

An excerpt from Berry v. Godwin (Tex. Com. App.) 222 S. W. 191, 193, is pertinent: "The question presented by the third assignment is whether the deed executed by plaintiff in error to his wife was delivered.

"The evidence is uncontradicted that it was executed, acknowledged, and duly recorded, and that at the time of the trial it had been on record for about 30 years. It was presumptively delivered. There being no evidence in the record that the deed was not delivered, the trial court and Court of Civil Appeals did not err in giving it effect as a valid conveyance."

It will be observed that the Ojerholm deed has all the elements mentioned in the immediate quotation, and that it has been of record for thirty-seven years.

City of San Antonio v. San Antonio Academy (Tex. Civ. App.) 259 S. W. 995, 997, is another opinion citing numerous authorities to the effect that "the registration of the deed would evidence not only delivery but acceptance."

For these reasons we would not be justified in reversing the judgment on the ground of the alleged errors under consideration.

The controversy between McAnally et. al. and the Texas Company will now be considered. It will be assumed that McAnally established a record title to the disputed land, and we conclude that the record shows the litigants to be contending for the same lands, and that they are embraced in the field notes of the "Maggie A. Teagarden Tract," as set out in the cross-petition of the Texas Company and the court's decree. This disposes of the appellees' contentions that the appellants' field notes were fatally defective and insufficient to show they were contending for the lands claimed by the Texas Company et al.

McAnally et al. assert they established a record title to the 123.7 acres in the north part of the south ½ of section No. 8, and that they could only be divested of title to same by a proper showing of limitation. The appel-

lees contended they were entitled to tack the adverse possession of A. A. Sanders to that of W. A. Hill and Maggie A. Teagarden, and the adverse possession of Hill and Teagarden to Teagarden, and her adverse possession to the Texas Company, to establish tenure of ten years' adverse possession; the main contention arising between appellants and appellees to the effect that the appellees could not tack the possession as above enumerated, for the reason that appellees had failed to prove any privity of estate between said successive adverse claimants, and that, having failed to establish the tenure of ten years' possession in any one of the said parties, they could not recover the 123.7 acres contended for by McAnally et al. The sufficiency of the evidence to establish adverse possession is also challenged.

By propositions 1 and 2, appellants contend that no privity of estate between the successive claimants so as to permit the successive possessions to be tacked was established. The second proposition more specifically attacks the judgment as being unsupported by any evidence of privity of estate, for the following reasons: (1) The lands sued for are not described in the deeds of conveyance; (2) there was no showing of verbal sale or transfer of such lands from one claimant to a succeeding claimant; (3) that the respective claimants were never on the land described in the deed, or that in controversy; and (4) because there was never a physical or parol transfer of the tract in controversy.

The deed specified a conveyance of 257.65 acres of land. The deed contained specific field notes. The appellees claim a well-defined inclosed tract was transferred each time, and that a recent survey thereof discloses that it contains 333.35 acres.

No useful purpose would be served by discussing the usual elements essential to limitation title, and the opinion will, as briefly as possible, deal with the contentions of the litigants as they revolve around the question of privity of estate. Our statute (article 5516, R. S. 1925) provides that: "Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

██ Privity of estate, as said in section 89, vol. 2, Tex. Jur., is shown under the following circumstances: "Privity of possession between successive occupants or possessors of the land is shown to have existed, apparently, by proof that the earliest occupant's possession and claim passed or was transferred to the later occupant by agreement, gift, devise or inheritance. The fact of privity is not established where it simply appears that the land was occupied by different persons successively, there being nothing to show that the claim of the earlier was transferred to the later occupant by contract or otherwise."

In determining the privity of estate by the process of tacking, C. J. vol. 2, p. 91, § 96, states the general rule: "The general rule is that possession can not be tacked to make out title by prescription where the deed under which the last occupant claims title does not include the land in dispute. It must clearly appear that the particular premises were embraced in the particular deed or transfer, in whatever form it may have been made."

The important exception is:

"However, the mere fact that the land in dispute is not included in the deed will not of itself operate to deprive the grantee's possession of the land of the attribute of privity. Even though the deed may have contained a defective description as to require correction, yet sufficient privity exists between the successive occupants where there was a parol delivery of possession, and there are numerous decisions to the effect that a mistake in a deed whereby a portion of the premises intended to be conveyed has been omitted in the description does not prevent the grantee from acquiring title by prescription to such portion if there is an actual transfer of the possession thereof. *But an actual transfer of possession is of course necessary where the land is not included in the deed.* (Italics ours.) So it has been held that independently of any question of mistake successive grantors may transfer their possession of a strip of land successively and continuously occupied as part of the granted premises, but not included in the description in any of the deeds, and that by such continuity of possession for the prescriptive period, title by limitations may be acquired. The decisions in this and the preceding section, it may be observed, are readily distinguishable. In the first line of decisions the deed is relied on to establish privity, while in the second line of decisions, the actual transfer of delivery of possession is relied on. This, as was shown in a preceding section, is sufficient to create privity; a parol transfer accompanied by delivery being sufficient for that purpose."

These rules are plain, and find general application in Texas, and we have found no Texas case upon this question, where it was decided that privity of estate existed, which does not give effect to the above-quoted general rule, or one of the exceptions thereto. Tex. Jur. vol. 2, § 87 et seq. This case is not a novel one, and, like others of its kind, it is simply one where deed to a party, A. A. Sanders, and the respective deeds on down through successive claimants to the Texas Company, did not by their field notes cover the entire tract of land which the appellees claim was each time, through such successive claimants, transferred as an identity or well-known inclosure, and understood to be so conveyed each time. It is a case where privity of pos-

session or succession in possession of the respective claimants is the vital consideration.

■ For the purpose of transferring rights to mature a title by the ten years' statute of adverse possession, it was not necessary that the deeds describe all the lands. Davis v. Adams, 61 Tex. Civ. App. 223, 129 S. W. 150, 151; Moran v. Moseley (Tex. Civ. App.) 164 S. W. 1093; Shuttles v. Butcher (Tex. Civ. App.) 1 S. W. (2d) 661, 665; Clithero v. Fenner, 122 Wis. 356, 99 N. W. 1027, 106 Am. St. Rep. 978; Rich v. Naffziger, 255 Ill. 98, 99 N. E. 341, 343.

■ In fact, it is not essential that there be any deed at all for perfecting of title under said statute. Houston Oil Co. v. Gore (Tex. Civ. App.) 159 S. W. 924–928; Bennette v. Collins, 54 Tex. Civ. App. 16, 116 S. W. 618–620; Davis v. Adams, 61 Tex. Civ. App. 223, 129 S. W. 150, 151; Moran v. Moseley (Tex. Civ. App.) 164 S. W. 1093; Belotti v. Bickhardt, 228 N. Y. 296, 127 N. E. 239.

■ As said in Shuttles v. Butcher, supra: "An actual transfer of an adverse possession is necessary to attribute privity where the land is not included in the deed." This excerpt is a brief statement of the main element in this controversy. A purchaser's possession must be referable to that of the vendor.

A paragraph of the opinion in Rich v. Naffziger, supra, fits so many angles of this case that we quote from it, as follows:

"The deed is proper to be considered in determining whether possession of the land in the inclosure not described in the deed was taken at the same time as the possession of the land described therein, and where the deed is followed by the delivery of possession of the entire inclosure, it is sufficient evidence of a transfer of possession to raise the requisite privity between the parties. But a paper transfer is not necessary to connect adverse possessions. It may be a means in establishing the fact of privity, but is not the only means. Illinois Steel Co. v. Budzisz, 106 Wis. 499, 81 N. W. 1027, 82 N. W. 534, 48 L. R. A. 830, 80 Am. St. Rep. 54. In discussing the circumstances under which the possession of disseisors may be joined, the Wisconsin Supreme Court said, in Illinois Steel Co. v. Paczocha, 139 Wis. 23, 119 N. W. 550: 'The only essential of the transfer is that the predecessor passes it to the successor by mutual consent, as distinguished from the case where a possessor abandons possession generally, and another, finding the premises unoccupied, enters without contract or relation with the former.' * * *

"The privity required is that there must be a continuous possession by mutual consent, so that the possession of the true owner shall not constructively intervene."

The law of the case is correctly reflected by the authorities cited and the excerpts quoted. After a study of the authorities relied upon by appellants and the appellees, we are persuaded they do not differ so much on the law applicable to the facts as they do upon the existence of testimony or the weight thereof. The testimony is of great length, covering 780 pages. No useful purpose would be served by quoting from it. Our conclusions only derived from a careful study thereof will appear. Upon this phase of the case we are of the opinion it was clearly one to be submitted to the jury, and that there is evidence to support the conclusion that each of said claimants, beginning with Sanders, was in possession, by tenant or tenants, of the disputed lands, along with those described in the various deeds on down to the Texas Company, and that each treated said lands as a part of the original tract or inclosure passing by transfer from one of the respective claimants to another, and there is evidence that each claimant transferred the possession of the whole of said tract as an identity to his succeeding claimant, and did so in a manner establishing the attribute of privity, as prescribed in the following authorities: Davis v. Adams; Moran v. Moseley: Shuttles v. Butcher; Rich v. Naffziger; Clithero v. Fenner, supra; and Bateman v. Jackson (Tex. Civ. App.) 45 S. W. 224.

In such state of the record the law would not authorize this court to disturb the verdict and judgment on the grounds urged in the foregoing propositions.

In so concluding, there is nothing in our holding in conflict with the opinion in Williams v. Fuerstenberg (Tex. Com. App.) 23 S. W. (2d) 305, cited and relied upon by appellants. That case is distinguishable from this one on the facts. There, neither the owner of the land nor the tenant appears to have laid adverse claims to the lands adjoining but not described in the owner's deed. The owner of the land described in the deed gave the tenant no authority over the land inclosed therewith. The appellees here developed a different case. They pleaded and supported with testimony a case wherein the various successive grantors or claimants held and occupied by tenants an entire tract as an identity; the tract so held by them being an inclosure appropriately used for the maturing of title by limitation.

■ The right of adverse claimants to hold by tenants is recognized in this state, and that contention need not be further noticed. Wickizer v. Williams (Tex. Civ. App.) 173 S. W. 1162; Didier v. Woodward (Tex. Civ. App.) 232 S. W. 563, 565; Stephens v. House (Tex. Civ. App.) 257 S. W. 585.

■ The foregoing requires that all appellants' propositions, except 5 and 6 and 7 and 8, be overruled. Propositions 5 and 6 have been considered, and they are overruled. Propositions 7 and 8 complain that the issue of limitation as submitted to the jury was in the alternative and duplicitous as to the separate possessions, whereas the evidence con

clusively showed that neither person held possession a sufficient length of time to complete title by limitation, as claimed. These propositions are overruled. The issue was inartistically drawn, but it inquired of the jury if adverse possession of the tract of land had been held for a consecutive period of ten years, prior to April 4, 1929. In connection with this issue, the court gave a special charge, as follows: "In determining your answer to Special Issue No. 1, you will be governed by the following instruction: Such possession need not have been continuous for a period of ten years in the same person, either in person or by tenant or tenants, but if you find that such possession, if any, continued for a period of time in any one of those mentioned in a special issue, either in person or by tenant or tenants, and joined with such possession, if any, either in person or by tenant or tenants, in another or others of those inquired about, for a period or periods in determining your answers to the Special Issue No. 1."

For the purpose of still further clarifying the issue and presenting it in an understandable way to the jury, the appellants who are here complaining requested and had the court give their special charge No. 6, as follows: "In determining your answer to Special Issue No. 1 you will be governed by the following instructions: In combining the periods of possession, if any, of the parties mentioned in said special issue, you are charged as a matter of law, that you cannot consider and combine the possessions, if any, of any of said parties where such possessions, if any, do not follow into the party succeeding to such possession, if any."

In view of these special charges, and especially that requested by these appellants, we do not believe there was any possibility that the jury failed to understand the issue, nor do we think they could have been confused on the matter of tacking or joining of successive possessions. Appellants' special charge removed all the vice they now claim was involved in the manner of submitting the issue.

For the reasons assigned, the judgment of the trial court is in all things affirmed.