G. E. Smith, of Comanche, for appellant.

Oscar Callaway, of Comanche, and F. O. Jaye, of De Leon, for appellee.

### LACY v. BARTLETT.

No. 1351.

Court of Civil Appeals of Texas. Eastland.

Dec. 7, 1934.

Rehearing Denied Jan. 18, 1935.

FUNDERBURK, Justice.

By deed dated October 31, 1914, one Livingston conveyed to H. R. Lacy a tract of land described as "being 50 acres of the Daniel Kinchelo Survey," and further described by metes and bounds, the call for the beginning being "in center bed of Jimmie's Creek at the intersection of the west line of said Kinchelo Survey for the southwest corner of this tract." The calls for the south line and corners were: "Thence south

668 varas to center bed of Jimmie's Creek; thence up center bed of said creek to the place of beginning." On the same day H. R. Lacy, who also owned the land adjoining the above tract on the south, conveyed, by deed, to J. G. Keele (sometimes spelled Kiel) a tract described as "being 55 acres of land, more or less, out of the Daniel Kinchelo Survey," and in all other respects further described as the tract first above mentioned, except the calls for the south line and corners were as follows: "Thence south 668 varas to south bank of Jimmie's Creek, thence up said bank of said creek to place of beginning. It being the intention of this instrument herein to convey to the grantee the entire bed of Jimmie's Creek which forms the south boundary line of the tract herein described." After this deed was executed and recorded, the record was interlined to make the last-quoted call read as follows: "Thence south 668 varas to top south bank of Jimmie's Creek, thence up said bank of said creek to place of beginning. It being the intention of this instrument herein to convey to the grantee the entire bed and south bank of Jimmie's Creek which forms the south boundary line of the tract herein described." Of date August 25, 1915, J. G. Keele and wife conveyed the land to J. T. Guthrie, the field notes including only lands to the south bank of Jimmie's creek, but with the further recitation: It "being the intention of this instrument to convey to the grantee the entire bed and south bank of Jimmie's Creek to a fence which forms the south boundary line of the tract herein described." Thereafter, on November 19, 1915, J. T. Guthrie conveyed the land by the same description to C. C. Guthrie, through whom, by a number of mesne conveyances, all by the same description, John Bartlett now claims the land. While C. C. Guthrie was owner of the land, he, with the consent of the said Lacy, built a fence south of the bank of the creek which was on no line called for in any deed in the chain of title.

This action is a suit in trespass to try title brought by the said H. R. Lacy against John Bartlett to recover title and possession of the strip of land lying between the bed of Jimmie's creek and a fence built by Bartlett in 1933, which was located, or intended to be located, just inside the fence built by C. C. Guthrie in the spring of 1916. The plaintiff, in addition to his claim of title under deeds, also claimed title by the 3, 5, and 10 year statutes of limitation (Rev. St. 1925, arts. 5507, 5509, 5510). The defendant Bartlett claimed the land, based upon allegations to show that the fence line established by C. C. Guthrie was an agreed boundary line, and also claimed title by the 3, 5, and 10 year statutes of limitation.

The court, after overruling plaintiff's request for a peremptory instruction in his favor, submitted issues to the jury, who found (1) that there was a dispute between the owners as to the true location of the south boundary line of the land in question at the time, or prior to the time Guthrie built the fence testified about by him; (2) that at or prior to the time Guthrie went on the ground to build the fence in question he and Lacy did not know that the true location of the south boundary line to the tract in question was at a place other than where the fence was located and built; (3) that Lacy and Guthrie agreed that the south boundary line of the tract of land in question should be at the place where Guthrie built the fence; (4) that Lacy and Guthrie knew that the line so agreed upon was not in fact the true boundary line. The jury, in answer to other issues, found in favor of defendant upon his plea of 10 years' limitation, and against plaintiff upon his pleas of 3, 5, and 10 years' limitation. The court, after overruling a motion of plaintiff for a judgment in his favor, gave judgment for the defendant for recovery of the land in dispute, from which the plaintiff has appealed.

The appellant contends that the undisputed evidence showed conclusively that he was entitled to judgment for the land in dispute; that there was no competent evidence sufficient to support an affirmative finding that the fence marked an agreed boundary line, or that the defendant had had such adverse possession of and use or enjoyment of the land under a claim of right thereto as would give him title by the 10-year statute of limitation (Rev. St. 1925, art. 5510).

We have concluded that these contentions must be sustained. We think it may be regarded as undisputed that the record of the deed from Lacy to Keele was, without the knowledge or consent of Lacy, changed by means of interlineations so as to make it appear that the south boundary line of the tract, instead of being the south bank of Jimmie's creek, was the top of the bank. An abstract of the deed was admitted without objection, which did not contain such interlineations. The very positive testimony of Lacy that the deed contained no such description, the fact that he consulted the record at a time when it would necessarily have been brought to his notice, at which time, according to his testimony, there was no such

interlineations in the record, seems to be sufficiently corroborated by the evidence of the abstract to establish the fact conclusively, notwithstanding that Lacy was an interested witness.

 However, for the present purposes it is immaterial whether the deed called for the south bank of the creek or the top of the bank to a fence. The undisputed evidence showed that at the date of that deed, as well as before and after that time, there was a fence along the top of the bank of the creek, and that there was no other fence to which the reference to a fence in the description could apply. The deeds in the chain of title establish conclusively that the south boundary of the tract of land described as "55 acres, more or less," was either the south line of the bed of Jimmie's creek or the fence along the top of the bank of that creek. The undisputed evidence shows that the fence built by Guthrie in about 1916 was located and built with the consent of Lacy. The evidence shows conclusively, we think, that the fence was not located to mark the boundary line between the two tracts of land, but for the purpose of locating the fence at a place where it could be maintained for the purpose of preventing cattle, or stock, belonging to either of the parties from trespassing upon the lands of the other. Isolated answers of C. C. Guthrie to certain questions, standing alone, would suggest the contrary, but all his testimony considered together leaves no doubt, we think, that its purport is in accord with the statement above made. There was no room for doubt or uncertainty as to the location of the true boundary line. The boundary line was already marked on the ground before the deeds were made which called for it. It is equally certain there was no dispute as to where the boundary line was called for in the deed. In Voigt v. Hunt (Tex. Civ. App.) 167 S. W. 745, it was held that, in order to locate a boundary line by oral agreement which is not the true boundary line, it is essential under the statute of frauds that the true boundary be unknown and in dispute. The principle has been stated as follows: "When there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the adjoining owners may by parol agreement establish a division line; and, where the agreement is executed and actual possession is taken under such agreement, it is conclusive against the owners and those claiming under them." 69 A. L. R. page 1433, note; Hay v. Briley (Tex. Civ. App.) 43 S.W.(2d) 301.

In 9 C. J. p. 235, it is said: "A valid agreement between adjoining owners establishing a doubtful or disputed boundary is binding on themselves and those claiming under them, whether it is the true line or not."

An essential element is doubt or uncertainty as to the true location of the line. Any doubt or uncertainty as to the true location of a boundary line will not render valid a parol agreement to a line which the parties know is not the true boundary line. Voigt v. Hunt, supra, and authorities there cited.

The only testimony in this record relied on to show doubt, uncertainty, or dispute as to the boundary line is based upon the erroneous supposition that the owner of the tract of land was entitled to fix a boundary that with the other calls in his deed would include 55 acres of land. As a matter of law, the call for 55 acres, more or less, must yield to the more definite call for the south bank of the creek or the fence at the top of the bank.

 Where parties know where the divisional line is, an agreement fixing another line is contrary to the statute of frauds (Rev. St. 1925, art. 3995). Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340; George v. Thomas, 16 Tex. 89, 67 Am. Dec. 612; Coleman v. Smith, 55 Tex. 259; Browning's Ex'x v. Atkinson, 46 Tex. 608. This simply means that the doubt or uncertainty or dispute must not be as to who owns certain lands, but where the line should be located on the ground which is called for in the description given in the title papers. If the title papers call for a line already certainly marked on the ground, whether by natural or artificial objects—it makes no difference which—then there is no occasion for application of the principle of agreed boundary line.

It only remains to consider whether or not there was evidence supporting a finding that the defendant had title of the land under the 10-year statute of limitation. The testimony of J. T. and C. C. Guthrie affirmatively disproves, we think, that during the times of their ownership of the land they claimed same adversely to Lacy. The date of the deed from C. C. Guthrie to H. E. Donahoe was shown by the evidence to have been July 20, 1920. Donahoe, by deed dated October 1, 1923, conveyed the land to Mrs. M. A. Hardwicke. J. T. Guthrie got the land back from Mrs. Hardwicke under deed dated December 11, 1925. He in turn again sold the land to H. E. Donahoe by deed dated September 11, 1926. The first dispute concerning the land appears to have occurred while Donahoe was

the owner. Whether that was the first time or last time, the undisputed evidence is that the fence was moved back to its original position on the bank of the creek. There was from that time to 1933, just before the filing of this suit, no character of evidence to show adverse possession. There is wholly wanting the necessary evidence to establish that the different owners each had actual, open, adverse possession under a claim of title to the particular strip of land in question for a period altogether of 10 consecutive years.

The answers of the jury to two of the special issues were in direct conflict with each other, but this is rendered immaterial by our conclusions above stated.

We are therefore of the opinion that the trial court should have given a peremptory instruction in favor of the plaintiff for the land sued for, for which reason the judgment of the court below should be reversed and judgment here rendered for the appellant, which is accordingly so ordered.

### On Rehearing.

■ Appellee on rehearing earnestly contends that we erred in our original opinion in holding that there was no evidence to raise the issue of 10 years' limitation. Much testimony is set out in the motion to show that there was evidence raising such issue. Sometimes an issue (in the sense that an issue must be joined by pleadings and when supported by evidence must be submitted to and found by the jury) consists of two or more facts, the concurrence of all of which is necessary as a matter of law to support the issue. In such a case where there is, say, three such facts necessary to make up the issue, there may be ample evidence upon two of the facts, but, if there is a total lack of evidence upon the other fact, there is nevertheless presented a question of the want of evidence to support an issue. Such is the instant case as we view it upon the issue of 10 years' limitation. Giving full credit to all the testimony of the two Guthries, and of any other testimony tending to support the issue of 10 years' limitation, there remains wholly wanting any evidence of facts essential to show that Bartlett had title to the land under the 10-year statute of limitation (Rev. St. 1925, art. 5510). Bartlett acquired a tract from Fred T. Cooper, by deed dated May 8, 1929. This land lay north of the south bank of Jimmie's creek, and was de-

fined in the deed to be a fence, and which in our original opinion we held to be an old fence that formerly existed, and trace of which still remained at the time of the trial, and which excluded the land in controversy. There was no fence between this old fence line and the land undoubtedly belonging to Lacy. Bartlett, as a witness, did not testify that Cooper pointed out, or placed him in possession of, any land other than that called for in the deed. There is therefore no evidence that Cooper claimed this land, or ever had possession thereof. On July 20, 1920, C. C. Guthrie and wife conveyed to H. E. Donahoe the same tract of land which Cooper later conveyed to Bartlett. There is no evidence that Guthrie transferred to Donahoe any land other than that described in the deed. From the time that Donahoe first bought the land in 1920 until the time that Cooper conveyed it to Bartlett there is no evidence that the intervening grantees were placed in actual possession, and that they adversely held and claimed the strip of land in controversy during all that period of time. The only evidence of any adverse claim was that Donahoe at one time objected to the tenants of Lacy gathering pecans upon it. In McAnally v. Texas Co. (Tex. Civ. App.) 32 S.W.(2d) 947, 953, this statement was emphasized: "But an actual transfer of possession is of course necessary where the land is not included in the deed." In the very recent case of Wallace v. Neuman (Tex. Civ. App.) 74 S.W.(2d) 283, this court had occasion to consider whether there was any evidence to support a plea of 10 years' limitation very similar to the one presented in the instant case. There, as here, the deed did not include the land in dispute, and the proof was held to have failed because it was not shown that a number of the several occupants, or claimants in the chain of title, as shown by the deeds, actually conveyed possession of the land outside the description in the deeds to their vendees.

So, if it be granted that J. T. and C. C. Guthrie had possession of the land in dispute and claimed it adversely to Lacy, there is a total failure of proof that several of their subvendees were delivered possession and actually held and claimed adverse possession of the land in dispute altogether for a period, without break, of 10 years.

We therefore conclude that the motion for rehearing should be overruled, and it is accordingly so ordered.