T. CURTIS ANDREWS AND WIFE, KATHERINE ANDREWS
v. T. B. ANDREWS.

(Filed 2 March, 1960.)

**1. Boundaries §, 7:　Courts § 6—**

　　Where a proceeding to establish the true dividing line between contiguous tracts of land is removed from the Clerk to the Superior Court, the Superior Court acquires jurisdiction and may dispose of the proceeding notwithstanding that the Clerk did not hear the proceeding and render a decision therein, the statutory direction that the proceeding be heard first by the Clerk not being jurisdictional.

**2. Boundaries § 8—**

　　In a proceeding to establish the true boundary line between adjoining tracts of land, what constitutes the line is a matter of law for the court, where the line is actually located on the ground is a question of fact for the jury.

252—4

**3. Boundaries § 3—**

Where a corner is known and fixed, but the markers of the preceding corners have been destroyed, such preceding corners may be established by reversing the calls.

**4. Boundaries § 4—**

While corners marked and agreed upon by parties contemporaneously with the execution of the deeds may prevail over the descriptions contained in the instruments, where the corners can be definitely located from the descriptions in the deeds by extrinsic evidence, the location of such corners may not be changed by later parol agreement of the respective owners of the contiguous tracts.

APPEAL by respondent from *Fountain, S. J.,* February 1959 Term, of RICHMOND — argued as No. 462 at Fall Term, 1959.

Processioning proceeding under N.C.G.S., Chapter 38, to locate and establish a disputed boundary line between adjoining landowners, who acquired their lands from a common source.

Petitioners allege and contend that the actual location on the premises in controversy of the true dividing line is the line from point "B" to point "CC" to point "DD" as shown on the court map.

Respondent alleges that the actual location on the premises in controversy of the true dividing line is the line from point "2" to point "3" to point "4" as shown on the court map, which line was orally agreed upon by the parties, subsequent to the execution of their deeds to the lands, that concrete markers were placed on the agreed line on 14 April 1952, and that respondent occupied and cultivated and exercised ownership up to where the concrete markers were placed in 1952 since 1937.

According to the testimony of T. Berry Liles, one of the court appointed surveyors, who with T. M. Bray, another court appointed surveyor, made the court maps, the area of land in dispute is less than a tenth of an acre, the point "CC," as shown on the court map, is 1.05 feet west of a concrete marker at point "3," and there is a distance of 1.8 feet from the wooden stake at point "DD" to the concrete marker at point "4." The judge in his charge stated that he understood that points "DD" and "4" are about 18 inches, perhaps 20 inches apart, and at this place in the charge is a note in parenthesis, "Attorneys nod affirmatively."

One issue was submitted to the jury. On page 31 of the record immediately preceding the charge the issue is stated thus: "What is the true dividing line between the lands of the plaintiffs and defendant?" In the charge of the court and in the judgment the issue is stated as follows: "Where is the true dividing line between the lands of the

plaintiffs and the lands of defendant?" The jury answered the issue: "From point 'B' to point 'CC' to point 'DD,' as shown on the court map."

From judgment entered in accord with the verdict, respondent appeals.

*Page & Page and M. C. McLeod for petitioners, appellees.*
*Bynum & Bynum for respondent, appellant.*

PARKER, J.    There is no merit in respondent's contention that the Superior Court had no jurisdiction, for the reason that the Clerk of the Superior Court did not hear and render a decision in the proceeding. The statute directs a proceeding of this kind to be heard first by the clerk, but this direction is not jurisdictional. *Lance v. Cogdill,* 236 N.C. 134, 71 S.E. 2d 918. The parties stipulated that the proceeding was removed from the clerk to the Superior Court. This being so, the Superior Court could retain jurisdiction and dispose of the proceeding. *Woody v. Barnett,* 235 N.C. 73, 68 S.E. 2d 810.

The controversy in this proceeding is the proper location of the true boundary line between the adjoining tracts of lands of petitioners and respondent, who acquired their lands from a common source. In such a proceeding, what constitutes the line is a matter of law for the court: where the line is actually located on the premises in controversy is an issue of fact for the jury. *Jenkins v. Trantham,* 244 N.C. 422, 94 S.E. 2d 311.

A clear understanding of the facts is not without difficulty, due to the condition of the fourteen court maps filed with the record. Twelve of these maps representing a survey made November 1956 show no points marked "CC" and "DD" and no line marked with points "CC" and "DD." These maps state the contentions of petitioners are points "A-B-C-D-E-F-G-H-I-J-K," and the contentions of respondent are points "1-2-3-4-5-6-7-8-9-10-11," and lines showing such contentions of the parties and so marked are shown on these twelve maps. Another map is identical with these twelve maps, except between point "C" and point "3" there appear two small letters "CC," and between point "D" and point "4" there appear two small letters "DD," but no line is shown connecting these letters "CC" and "DD." Another map is substantially similar to the twelve maps (and also the other map, omitting the small letters "CC" and "DD") with these additions: One, it shows a line running from point "B" to point "CC" to point "DD" between the line running from point "B" to point "C" to point "D" and the line running from point "2" to point "3" to point "4."

Two, this map states "Points CC - DD surveyed Sept. 29, 1958." Three. This map states the contentions of petitioners as on the thirteen other maps, with this addition: "A-B-CC-DD-E-F-G-H-I-J-K." There is an identical statement of the contentions of respondent on all fourteen maps. It seems clear that the jury, and the judgment entered in accord therewith, fixed the dividing line as the line running from point "B" to point "CC" to point "DD," as shown on this last map set forth above.

It is alleged in the amended petition: "6. That the following three calls in the description of the lands of the petitioners and the lands of the respondent are identical and as follows: 'Thence with his line as follows: S. 66 deg. 20 min. E., 450.4 feet to a stake, S. 3 deg. E. 1817.4 feet along a plantation road to an iron stake in the center of said road; thence along said road S. 21 deg. 15 min. E. 1247.8 feet to an iron stake'; that both the corners of the line, 'S. 66 deg. 20 min. E., 450.4 ft. to a stake,' are known and established and marked by iron stakes; that the boundary line between the property of the petitioners and respondent will be properly located when the above call, 'S. 3 deg. E., 1817.4 feet along the plantation road to an iron stake in the center of said road; thence along said road S. 21 deg. 15 min. E., 1217.8 feet to an iron stake,' is properly surveyed and the two missing corners established." The answer thereto is: "That Allegation 6 of the amended complaint is correct and this answering defendant avers that the line should properly run 'along the plantation road to an iron stake in the center of said road'; that since said stake is properly in the center of said road, this defendant and the petitioner T. Curtis Andrews met on the premises on April 14, 1952, and, in the presence of other witnesses, including Surveyor T. Berry Liles, agreed that said stake was in the center of said road and by agreement both parties agreed to move said stake to the edge of said road rather than leave it in the center of said road and that, in accordance with said agreement, the corner was moved to the edge of said road and with the further agreement that a concrete monument should be placed at said agreed point; that said concrete monument was placed at the agreed point and is still in the same place that was agreed upon, and this defendant contends that the said concrete monument is now a correct corner between the lands of the petitioners and the respondent, or defendant, T. B. Andrews."

The parties, at the beginning of the trial, stipulated that "the point designated as 'B' and '2' is a fixed iron stake, and admitted correct corner, and the same as to point '11.'" The parties also stipulated and agreed "that the call, 'South 20, 45 East, which runs from point

C to D,' and the call, 'South 2 deg. 30' East,' which runs from 'B' and '2' to 'C,' both of which appear in the deeds of petitioners and respondent are incorrect."

The Court charged the jury as to what constitutes the true boundary line between the contiguous lands of the parties as follows: "Now, the petition alleges the call contributing (sic) the true dividing line, and that is admitted in the answer to be the true dividing line. And so I will state to you as a matter of law what the true dividing line is, reminding you, however, that it is for you to determine where that line is located. The line is 'thence with his line,' and this is reading from the deed to the plaintiffs, as I recall, 'thence with his line,' referring to the defendant's line, 'South 66 deg. 20' East, 450.4 feet to a stake, being South 3 deg. 1817.4 along a plantation road to an iron stake in the center of said road, and thence along said road South 21 deg. 15' East 1247.8 feet to an iron stake.' " Respondent does not challenge this part of the charge by any exception.

Petitioners' evidence tends to show that running the line called for in their deed forward from point "B," an admitted correct corner, would not ascertain and fix with certainty the location on the premises of the two iron stakes destroyed by the U. S. Army maneuvers, but that beginning with point "11," an admitted correct corner, and reversing the calls in their deed, and running reversely the location on the premises of these two destroyed iron stakes could be ascertained and fixed with certainty at points "DD" and "CC," as shown on the court map. This Court said in *Powell v. Mills*, 237 N.C. 582, 589, 75 S.E. 2d 759, 765: "The general rule as to this is that in order to locate a boundary of land, the lines should be run with the calls in the regular order from a known beginning, and the test of reversing in the progress of the survey should be resorted to only when the terminus of a call cannot be ascertained by running forward, but can be fixed with certainty by running reversely the next succeeding line."

Respondent assigns as error this part of the charge: "Now, there has been evidence relating to an alleged agreement between T. C. Andrews and T. B. Andrews in April, 1952, and evidence relating to the concrete markers, one placed at '3' and '4' and one, I think, I have made reference to point '2' as the concrete marker, but, actually, at or near a pine tree some 200 feet south of the point '2.' I instruct you as to that, that if the plaintiff T. C. Andrews and the defendant Thomas B. Andrews did agree on the location of either or all of those concrete markers, and if they did agree to consider those as designating the true boundary lines, then that would constitute only evidence for you to consider as to where the true boundary actually is, and if

you find from the evidence and by its greater weight that the boundary line, the true boundary line, is at some point other than the point, or points, if any, that you find they did agree to, then it would be your duty to locate the true dividing line at the point where it actually is, where you find from the evidence and by its greater weight the true dividing line to actually be, notwithstanding any agreement as to where the line would be considered to be or treated as being. On the other hand, if you find that there was such an agreement, then, of course, that is a circumstance and constitutes evidence for you to consider as bearing upon the question of where the true dividing line actually is located."

Respondent's evidence tends to show that the parties fixed the disputed boundary line between their adjoining tracts of land by parol agreement; that pursuant to such agreement, concrete markers were placed on the agreed line, and respondent contends that the judge should have instructed the jury that if they so found the facts, they should answer the issue submitted to them from point "B" to point "3" to point "4," as shown on the court map.

In the present proceeding what constitutes as a matter of law the true boundary line between the contiguous lands of the parties, as stated by the court in its charge, stands unchallenged by any exception by respondent. That is certain which can be made certain, and petitioners' evidence shows that the location on the premises of this true boundary line as set forth in petitioners' and respondent's deeds can be made certain by the deeds and a survey. Respondent offered no evidence to the contrary. A multitude of jurisdictions hold that an uncertain and disputed boundary line may, under certain circumstances, be fixed permanently by parol agreement, if accompanied by sufficient acquiescence and possession, but where there is no *uncertainty* as to the boundary line, a parol agreement fixing a boundary line in disregard of those fixed by the deeds is void under the Statute of Frauds, as it amounts to a conveyance of land by parol. 11 C.J.S., Boundaries, Sec. 67; 8 Am. Jur., Boundaries, Sec. 73; Tiffany Real Property, 3rd Ed., Sec. 653; Annotation 69 A.L.R. 1433. This general rule of law invoked by respondent is not applicable to the facts here, and it is not necessary for us to decide as to whether or not it is in conflict with some of our decisions, for the reason that here there is no uncertainty as to what the true boundary line is, and its true location on the premises can be fixed by the deeds and a survey.

This Court said in *Haddock v. Leary*, 148 N.C. 378, 62 S.E. 426: "For nothing is better settled in this State than that if the calls of a deed are sufficiently definite to be located by extrinsic evidence, the

location cannot be changed by parol agreement, unless the agreement was contemporaneous with the making of the deed."

This Court said in *Kirkpatrick v. McCracken,* 161 N.C. 198, 76 S. S. 821: "Where a division line between tracts of land is well ascertained, and can be located by the plain and unambiguous calls of the deed, the acts and admissions of the parties claiming the respective tracts are not competent evidence, either to change the line or to estop the party from setting up the true line. *Shaffer v. Gaynor,* 117 N.C. 15. But where the dividing line is in dispute, and is unfixed and uncertain, the acts and admissions of the adjoining proprietors recognizing a certain line as the proper division line is evidence competent to be submitted to the jury."

"If the calls in a deed are sufficiently definite to be located by extrinsic evidence, the location cannot be changed by parol agreement unless the agreement was contemporaneous with the making of the deed." *Daniel v. Power Co.,* 204 N.C. 274, 168 S.E. 217.

The true principle is laid down by *Smith, C. J.,* in laconic language in *Davidson v. Arledge,* 97 N.C. 172, 2 S.E. 378: "The rejected evidence would have been competent to fix an uncertain and controverted boundary, but not to change that made in the deed that distinctly defines it."

*Wiggins v. Rogers,* 175 N.C. 67, 94 S.E. 685, was an action brought to recover a parcel of land the ownership of which depended on the true location of the dividing line between adjoining landowners. The Court said: "Plaintiff proposed to show that the line had been run some years before the time of the trial by Posey Hyde, and that the respective owners had recognized it as the line of division between them for many years. This evidence was excluded by the Court, but we think it was competent, not to change the boundaries of the land (*Davidson v. Arledge,* 97 N.C. 172), or, in other words, to show that the parties had orally agreed upon a line different from the true line, but as some evidence to prove where was the true line."

*Dudley v. Jeffress,* 178 N.C. 111, 100 S.E. 253, relied on by respondent is not in point. In that case two tenants in common had a divisional line run by a surveyor, went upon the land with him, and ran and established this line with the intent of making deeds to the land in severalty, and so made the deeds. In its opinion the Court said: quoting from *Millikin v. Sessoms,* 173 N.C. 723, 92 S.E. 359: "It is settled beyond a controversy in this State that a line surveyed and marked out and agreed upon by the parties at the time of the execution of the deed will control the course and distance set out in the instrument."

*Nesbitt v. Fairview Farms, Inc.,* 239 N.C. 481, 80 S.E. 2d 472, and *Lowder v. Smith,* 201 N.C. 642, 161 S.E. 223, relied on by respondent are distinguishable, in that, *inter alia,* in both cases there are written agreements to settle a disputed boundary line.

According to the allegations of paragraph 6 of respondent's answer, above set forth, respondent and petitioner T. Curtis Andrews, met on the premises on 14 April 1952, and agreed that the stake was in the center of the road, and by agreement agreed to move the stake to the edge of the road, and it was so moved, and a concrete monument was placed at the agreed point, and respondent contends the concrete monument is now a correct corner between their lands. The authorities are practically unanimous that coterminous landowners cannot conclusively establish as a boundary between their lands a line which they know not to be the true one, except by an agreement in writing based on a proper consideration and containing words of conveyance. *Haddock v. Leary, supra; Lewis v. Ogram,* 149 Cal. 505, 87 P. 60, 10 L.R.A. (N.S.) 610, 117 Am. St. Rep. 151; *Jones v. Scott,* 314 Ill. 118, 145 N.E. 378; *Volkart v. Groom,* (Mo., Supreme—1928), 9 S.W. 2d 947; *Lacy v. Bartlett,* (Texas Civil Appeals), 78 S.W. 2d 219; Annotations 69 A.L.R. 1451 and 113 A.L.R. 427, where many cases are cited; 8 Ann. Cas. 85, where many cases are cited; 8 Am. Jur., Boundaries, Sec. 72; 11 C.J.S., Boundaries, p. 640.

The assignment of error to the charge above set forth is not prejudicial to respondent, and is overruled.

The other assignments of error brought forward and discussed in respondent's brief have been examined and are overruled.

In the trial below we find no error sufficiently prejudicial to warrant a new trial.

No error.